CLARA F. BARNETT AND SPENCER BAKER, Partners, d/b/a
BARNETT REALTY COMPANY, Complainant-Respondent,

*v.*

F. W. THIRKIELD AND WIFE, MARIE THIRKIELD,
Defendants-Petitioners.

(*Nashville*, December Term, 1956)

Opinion filed March 8, 1957.

Rehearing Denied April 1, 1957.

James S. Shields, Memphis, for petitioners.

Caruthers Ewing, Memphis, for respondent.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

The Chancellor and the Court of Appeals are in sharp disagreement as to their respective findings from the evidence presented orally to the Chancellor while proceeding to try this case according to the forms of Chancery. Thereby is placed upon this Court, it having granted the Thirkield petition for *certiorari,* the duty of reviewing the evidence *de novo,* accompanied by a presumption that the decree of the Chancellor is correct "unless the preponderance of the evidence is otherwise". Code Section 27-303.

By a contract of three months duration expiring on November 14, 1954, Mr. Thirkield and wife granted to a real estate broker's partnership known as Barnett Realty Company the authority (exclusive, in so far as it concerns this case) to sell for a specified cash consideration Thirkield's residence, then under construction. By oral agreement this authority was allowed to continue until terminated by Thirkield's letter of December 2, 1954.

On December 17, 1954, Thirkield listed the property with Mr. Fisackerly, also a real estate broker. On January 11, 1955, Fisackerly presented Thirkield a written offer of purchase conditioned on acceptance within thirty

days. On February 2 the offer was accepted after certain modifications favorable to Thirkield had been made. The offeror, Mr. James D. Causey, became the purchaser.

Thereupon Barnett sued Thirkield for a judgment in the amount of the commission allowed and required by the rules of the Memphis Real Estate Board of which Barnett, but not Fisackerly, was a member. The commission charged by Fisackerly for the above sale was less than the commission allowed by the rules of this association.

The theory of the Barnett bill is that Barnett "first brought the property to the notice of" Causey, and that Thirkield terminated the Barnett agency on December 2 in order "to defraud them of the real estate commission to which they are entitled in equity and in law".

■ The Chancellor, in finding that Barnett was not the proximate, efficient and procuring cause of the sale to Causey, correctly observed that a real estate broker is not "entitled to a commission by merely showing real estate or by ineffectively working with an ultimate purchaser from the owner" through the activities of another agent.

In reversing the Chancellor, and in awarding Barnett a judgment, the Court of Appeals found:

"In the instant case, we find as a fact, * * *, the defendant terminated the listing contract in order to avoid the payment of commissions and negotiated with the Causeys through Mr. Fisackerly, a cut-rate real estate broker, and thereby perpetrated a fraud on complainants."

The testimony of Thirkield, and that of Fisackerly, is that Thirkield did not furnish directly or indirectly to Fisackerly the name of Causey or of any one else. Fisackerly's testimony is that he was given Causey's name by an entirely disinterested third party, who merely happened to have learned of Causey's previous interest in the acquiring of the Thirkield residence, and, being aware of Fisackerly agency, passed that information on to him. There is no contradition of this evidence.

The original agreement between Thirkield and Fisackerly required the payment by Thirkield of a commission, in the event of sale, in the same amount as that required by the rules of the Memphis Realty Association and by the now defunct contract between Thirkield and Barnett. The testimony of Fisackerly is that some time later, in order to bring about an acceptance of the Causey offer presented by Fisackerly, he, Fisackerly, agreed to reduce his commission.

With reference to this testimony of Fisackerly, the brief submitted in behalf of Mrs. Barnett makes the following statement:

"Fisackerly branded himself as a liar when he testified at Tr. 138 that at *no time* did he discuss with Thirkield a cut-rate commission, but he later admitted this was not true. (Tr. 139 and 161-2.)"

With reference to the evidence on pages 138-139, Fisackerly in response to a question as to whether he had "a little side agreement" as to the commission replied:

"At the time I took the listing, no, sir.

"Q. At any time? A. No, sir.

"Q. You never at any time had any agreement that it would be less than the usual commission? A. At the time we got to close the transaction. Mr. Thirkield had quite a few expenses, and I told him that—in other words, the commission ran $1300, and that was right at the end, sometime around February, but it was not in the beginning at all."

The evidence at the referred to pages 161-162, is only a repetition by Fisackerly of his previous testimony that at the time of the listing he was to receive the five (5%) percent commission but "at the last we had a hard time working a contract out", and that he then agreed to a reduction in his compensation.

The original offer which Fisackerly procured from Causey on January 11, 1955, was $1,500 more than the offer which Barnett on November 24 had procured from Causey. Finally, this offer being unacceptable to Thirkield, Causey was induced to raise his bid by $500. This made the offer produced by Fisackerly $2,000 better than the one which in November Barnett had procured.

Mrs. Barnett testified that in the course of her negotiations with Causey, he told her that he would increase his bid by $2,000, but he wanted Thirkield to first make a proposition; but that Thirkield never would make one.

Causey was called as a witness by Barnett. His testimony on this point is that he told Mrs. Barnett that he "would be interested if Mr. Thirkield presented another proposition to me—but I never indicated what I would be willing to pay or any thing else at that time". When asked if he ever indicated to her what additional amount he would be willing to pay his reply was that "the best

answer I can give is that I am almost certain that I did not, but that I would hesitate to say dogmatically that I didn't.''

■ ■ Mrs. Barnett testifies in detail as to her activities with reference to the sale of the Thirkield residence and of her efforts with Causey. It is a fact that her efforts to sell this property were diligent, and in connection therewith she did spend a substantial sum in advertising. Such spending is, of course, a calculated risk of the business. This testimony was material on the question of whether Barnett was the proximate, efficient and procuring cause of the sale finally made to Causey.

Causey, a witness called by Barnett, testified that after he had submitted his November 24 offer through Mrs. Barnett, and it had been rejected by Thirkield, he and Mrs. Barnett undertook, probably unsuccessfully, to talk by phone about three times, and subsequently that he happened to meet her on the street, and there, in response to her inquiry as to whether he was "still interested in the Thirkield house", he replied, in substance, that "I could be"; that she replied "I will get in touch with you", but never did, except that "she got in touch with me after I signed the contract with Mr. Fisackerly". His best recollection is that this "was on my birthday; January 31". That is the date she wrote the letter to Mr. Thirkield stating that if he sells his property to Mr. Causey she will "expect a commission on the sale".

In connection with Mr. Causey's testimony, it is appropriate to note at this point that the Chancellor's opinion said that "the Court accepts the testimony of Mr. and Mrs. James D. Causey, they being apparently disinterested witnesses introduced and vouched for by the complainants".

Upon receipt of Thirkield's letter of December 2 terminating her agency, Mrs. Barnett inquired by phone of Thirkield as to why. His reply was that in view of the failure to sell it, and the pending mortgage due thereon, he and his wife had decided to live there and, in order to cut down expenses, to maintain his office there.

Mrs. Thirkield's testimony is to the same effect. She also testified that both before and after the November 24 offer procured by Barnett she had moved furniture into the house and that at her instance merchants had visited the residence, taken measurements for the purpose of giving her estimates as to costs of carpets, rugs and traverse rods. There is no contradiction of this evidence.

It was on December 17, after Mr. Thirkield on December 2 had told Mrs. Barnett of his plan to live in the residence, that he listed the property for sale with Fisackerly. It is upon this fact that the Court of Appeals finds that the preponderance of the evidence is contrary to the Chancellor's decree, and that Thirkield terminated the Barnett agency for the purpose of negotiating a sale to Causey through a "cut-rate real estate broker, and thereby perpetrated a fraud on complainants".

The Court of Appeals, in concluding as stated, said that the Chancellor erred in holding "that it was immaterial whether Thirkield told Mrs. Barnett that he intended to move into the house as an excuse for cancelling his contract with her. * * * That, in our opinion, is the crux of the law suit", holds the Court of Appeals.

We think it to be a fact that the Court of Appeals inadvertently overlooked, or misconstrued, the actual holding of the Chancellor on this item. That holding, as stated in his opinion, is: "Thirkield had a right on

December 2nd to cancel any contract between the parties, *if such cancellation infringed no right of the complainants*. (Emphasis supplied.) Of course, Barnett had a right not to be defrauded. Implicit in the Chancellor's decree is a finding that it was not defrauded.

It is stated in the opinion of the Court of Appeals that the furniture placed by the Thirkields in this residence, to quote from the opinion, "had been previously placed there for display purposes". Thirkield's brief asserts that there is no evidence to support this finding. This Court is unable to find any evidence to justify such finding unless it is permissible as an inference from certain testimony of Mrs. Barnett. She testified that Thirkield, after stating in reply to her inquiry, that he intended to occupy the residence, then volunteered the statement that he had moved out all the furniture previously placed therein. Mrs. Barnett's brief states that this negatives "any idea of Thirkield occupying the house".

Just why Thirkield would have volunteered such a statement if he was telling Mrs. Barnett a falsehood as to why he terminated her agency does not appear. However that may be, Mrs. Barnett says that the statement did not cause her to disbelieve his representation as to intentions.

Thirkield's uncontradicted testimony is that the loss of certain substantial income bearing business between the termination of the Barnett agency on December 2 and the listing of the property with Fisackerly on December 17 caused a change of intention with reference to a sale of the property. There was no effort to probe for the truth or falsity of this statement.

The final point made by Barnett's brief is that Thirkield is thoroughly discredited because he denied having received a letter from his mortgagee to the effect that the building mortgage on his residence was going to be foreclosed if he didn't pay it right away.

Upon cross-examination Thirkield was asked whether this mortgage company had informed him that "your loan was indefault". In substance, but in different language, this question was repeated several times in cross-examination. The answer of Thirkield was that:

"A. The word default was not used, sir.

"Q. What was used? You know what I mean. A. It said it was coming due and I had better make arrangements to get it paid for."

The evidence introduced in behalf of Mrs. Barnett is that under date of January 11, 1955, the mortgage company wrote its attorneys a letter directing those attorneys to "file in preparation for beginning foreclosure on Monday, January 17, on this property". In connection therewith, the following statement appears in Mrs. Barnett's brief, quoting:

"It was and is the contention of Complainants that Thirkield was about to be foreclosed and thus had to take up the offer of Causey dated January 11, 1955, * * *"

The offer of Causey dated January 11, 1955, was an offer procured by Fisackerly. It was not accepted by Thirkield until on or about January 30 Causey increased his offer by $500, and Fisackerly agreed to reduce his commission from $1,310 to $1,000. A copy of the mortgage company's notice of January 11, above referred to,

is said to have been mailed Thirkield. If so, in the usual course of business, it would not have been received until January 12, one day after the date of the Causey offer accepted, when modified three weeks later. We have dealt at length with the evidence centered around this mortgage only out of deference to the fact that respondent's solicitor seems to attach some importance thereto. Whether about to become due or in default and foreclosure threatened, all agreed that this mortgage had to be paid within the reasonably immediate future.

■ ■ It is not the province of an appellate court to make an argument or go into detail in a case of this character on the question of credibility of witnesses or of slight discrepancies in their testimony. It is only the province of such Court, after full and exhaustive consideration, to state its fact conclusion. *Cooper v. State,* 123 Tenn. 37, 60-61, 138 S.W. 826. After so proceeding in this case, this Court's conclusion is that the preponderance of the evidence is not contrary to the decree of the Chancellor.

The disagreement between the Court of Appeals, on the one hand, and, on the other, the Chancellor and this Court, is in the fact that the Court of Appeals first finds that Thirkield made a false representation to Mrs. Barnett as to why he was terminating her agency, and having so found, the Court of Appeals infers therefrom, all evidence to the contrary notwithstanding, that the purpose of such termination was to continue negotiations with Causey through a "cut-rate real estate broker" and thereby avoid the payment of full commissions. Assuming that Thirkield's excuse for terminating Mrs. Barnett's agency was false, it does not follow, in this Court's

opinion, that, notwithstanding all evidence to the contrary, such termination was for the purpose thereby inferred by the Court of Appeals.

The evidence without contradiction is (1) that Thirkield did not give to Fisackerly the name of Causey as a prospect, but that it was obtained through an independent source solely by luck and coincidence; (2) the original agreement between Thirkield and Fisackerly called for the regular commission, modified subsequently only because necessary to procure the agreement of Thirkield to a sale for a consideration $2,000 in cash more than that contained in the previous Barnett offer; (3) the testimony of Causey, the purchaser, requires a conclusion that Barnett was not the proximate, efficient and procuring cause of the sale to Causey. This evidence,— and there is none to the contrary,—is entirely inconsistent with the inference which the Court of Appeals seems to think it should attribute to what it considers to be a false reason given by Thirkield for the termination of the Barnett agency.

The decree of the Court of Appeals will be reversed and that of the Chancellor affirmed.

## On Petition to Rehear.

The Court directed publication of its opinion heretofore rendered to the end that the profession might the more particularly notice the statutory duty of this Court in reviewing evidence *de novo* to accompany it with a presumption that the Chancellor's decree is correct, unless the preponderance of the evidence is otherwise. Code Section 27-303.

A petition to rehear has been filed, and has been denied in a separate opinion filed in this cause. With one exception, the opinion written in response to its insistences are covered, as this Court views it, in its original opinion. Therefore, there is no necessity for the publication of this additional opinion except as regards the one exception mentioned.

In its original opinion this Court made the statement that Thirkield at the time of the phone conversation of December 2 "volunteered" a statement to Mrs. Barnett that he had moved out certain furniture. The evidence does not support that statement. Therefore, this additional opinion marked for publication is filed in order to correct that error.