MRS. PAULINE L. FOLK

*v.*

WINSTON P. FOLK.

355 S.W.2d 634.

357 S.W.2d 828.

(*Nashville,* December Term, 1961.)

Opinion filed February 8, 1962.

Petition for Rehearing Denied April 4, 1962.

Petition for Additional Counsel Fees Overruled June 5, 1962.

368

NEWMAN BRANDON, JR., TOM STEWART, Nashville, for petitioner.

DAVID M. KEEBLE, Nashville, HOBART ATKINS, Knoxville, for respondent.

MR. JUSTICE BURNETT delivered the opinion of the Court.

A divorce suit was brought September 10, 1954, by the wife for divorce for cruel and inhuman treatment and indignities to her person. On April 24, 1957, Chancellor Steele denied her a divorce, but decreed her a separate maintenance, ordering the husband to pay her $150.00 a month for her support pending the further orders of the court, and providing he might in the future apply to the court to discontinue such payments "upon a showing by the Defendant that Complainant has arbitrarily or unreasonably rejected a sincere and honest effort or efforts on his part to effect a reconciliation and resumption of the marital relation and a discharge of his marital duties."

He acquiesced in that decree. She appealed from so much of it as denied her a divorce. The Court of Appeals modified and affirmed the decree, striking out the part above quoted and providing that if the husband asked the court to discontinue such payments, the rights of the parties should be determined upon all the circumstances,

as contemplated by the statute (T.C.A. sec. 36-820); and the court remanded the case.

After the remand, the husband, on November 13, 1959, petitioned the Chancellor to discontinue his payments to his wife, alleging, as ground for such relief, that he had "repeatedly, and up to a recent date, in sincerity and in good faith, sought a reconciliation with his wife," and had "invited and urged her to come make her home with him," but that his efforts in this regard had been declined by her.

In her answer to his petition, she denied that he had sought any reconciliation in sincerity or in good faith; she referred to Chancellor Steele's findings that he "had been domineering, sullen, short of temper, and on occasions had asserted more physical force against his wife than was necessary or than he should have done"; and she averred that he had not changed this attitude toward her.

The matter was heard orally before Chancellor Lentz according to the forms of Chancery. In his findings, he noted that the husband's brief had stated his only motive in seeking to discontinue the payments to his wife "was to completely remove this matter from the court arena," as the best way to effect a reconciliation. After reviewing the evidence, Chancellor Lentz summed up his findings and conclusion as follows:

"From all the proof this Court is of the opinion that petitioner has not made a sincere, honest and reasonable effort toward reconciliation which has been arbitrarily refused. Neither is the fact that petitioner thinks he can effect a reconciliation by removing this

cause from the court arena justification for granting the relief prayed for.''

He accordingly entered a degree August 8, 1960, dis missing the husband's petition and directing that he continue to make the payments as required by the former decree—$150.00 a month to the wife for her separate maintenance and support. The husband saved a bill of exceptions and appealed to the Court of Appeals.

That court, one judge dissenting, reversed the Chancellor's decree and decreed that, after three months from the entry of its decree, the husband shall be relieved from making any further payments to his wife, without regard to whether there has been a reconciliation or not. The wife has presented to this Court a petition for certiorari to review and reverse that decree. The certiorari was granted. The case has been ably briefed and argued before this Court. We now have the matter for disposition.

■ Inasmuch as the Chancellor and the Court of Appeals differed in their respective findings and conclusion of fact upon the oral evidence heard by the Chancellor, this Court must review the evidence *de novo,* but with the presumption that the Chancellor's decree is correct unless we find the evidence preponderates against it. T.C.A. sec. 27-303; *Barnett v. Thirkield,* 201 Tenn. 528, 300 S.W.2d 905.

Each of these parties is of a prominent family; the wife, a daughter of a General of the Army; and the husband, a retired Admiral in the Navy. They were married in 1931 and have two children, a daughter 24 and a son 22 years of age. During the husband's service in the Navy, they lived in many places, but kept their domicile in Davidson County. They lived in London,

England from 1950 to 1954, while he was on duty there.

On their return to the United States September 2, 1954, they separated, she went to live in the home of her mother in Franklin, Tennessee, where she has lived ever since; and he went to Knoxville where he has since been living.

As stated, she filed her bill for divorce September 10, 1954. He denied the charges. While in the opinion of Chancellor Steele, affirmed by the Court of Appeals, the proof did not make out the grounds for divorce, it did show such misconduct on the part of the husband as justified a decree for separate maintenance. The latter court pointed out that such misconduct, though not constituting a ground for divorce, justified a decree for separate maintenance.

The wife's right to separate maintenance rests on the husband's duty to support her and on his fault causing their separation; and a court of equity has inherent jurisdiction, independent of our divorce statutes, to decree her separate maintenance though his fault was not a statutory ground of divorce. In *Stephenson v. Stephenson,* 201 Tenn. 253, 257, 298 S.W.2d 717, 719, Chief Justice Prewitt, for the Court, said:

"The right of the wife to a separate support and maintenance is founded upon the obligation of the husband to support the wife and is in no sense dependent upon the divorce statutes. It is true that the relief is frequently granted as an incident to a divorce proceeding. But it is well settled that the chancery court has the inherent power, independent of statute, to grant the relief in proper cases, where a divorce is not sought or *in which the complainant is not entitled to a divorce*" (citing cases) (italics ours).

■ There has been some discussion in the briefs as to the nature and duration of a decree for separate maintenance. Such a decree is not a mere temporary order but is a final decree in the sense that it is appealable as of right, and is binding as *res judicata* upon the facts and issues adjudged. Freeman on Judgments (5th ed.), secs. 909, 1442; Cf. *Hicks v. Hicks*, 26 Tenn. App. 641, 176 S.W.2d 371.

■ Such a decree continues in force, and the husband must continue to make the required payments to the wife, until the court orders their discontinuance, after first being satisfied that there has been a reconciliation, or that he proposes in good faith to take her back and resume his marital duties. *Cureton v. Cureton*, 117 Tenn. 103, 96 S.W. 608, *Rutledge v. Rutledge*, 37 Tenn. 554, 27 Am.Jur., Husband and Wife, secs. 410, 428.

So the question here is whether the proof established the allegations of the husband's petition to discontinue his monthly payments to his wife; whether he had, in sincerity and in good faith, made an honest effort to bring about a reconciliation with his wife and a resumption of their marital relations, and such effort had been unreasonably refused by her.

Soon after the first opinion of the Court of Appeals (April 25, 1958), the husband began a "campaign for a reconciliation", which consisted of writing letters to his wife, keeping copies of them for the record. When he would send her a monthly payment, he would enclose a letter, and keep a carbon copy. He read in evidence parts of copies of some 16 such letters in which he made general statements that he desired and hoped for a reconciliation and resumption of the family relation. Excerpts

from such letters are quoted in the opinion of the Court of Appeals.

But the husband appears to have done nothing else to bring about such a reconciliation. He never went to see the wife, or had any conversation with her about a reconciliation, and never offered any plan or proposal for re-establishing any home or family relation. He admitted as much in his cross-examination. He was asked, and answered:

"Q. Did you make her any particular propositions about where you might live or what might be done, or do anything besides write letters just generalizing?

"A. No, Senator, I thought we should get together and then we could resolve that ourselves."

The wife testified that there had been no change in the husband's attitude toward her; that he still manifested the same spirit of domineering, short temper, cruelty and vindictiveness which caused their separation; that he had not made any effort toward a reconciliation; that she had no confidence in his sincerity or good faith, but regarded the "fine words" in his letters as "a complete farce, *written purely for the purpose of this trial*" (Italics ours). On her direct examination, she said:

"Q. Have you seen the slightest effort to effect a reconciliation evidenced by your husband?

"A. No, there have been words, which he is very good at putting together and which sound fine, that he can twist and make the beautiful fiction that he wants—

"THE COURT: Wait just a minute. Lets just let her stick to facts and not go into—

"THE WITNESS: I'm saying that, your Honor, because those letters are words. His actions have been nil, absolutely nil. Not one single time has he called me up to make an appointment to talk about anything, not once had he come to that house of my mother's to see me to talk about anything. The only times he has appeared at that house was for some reason than to see me,—to get the children to go out somewhere, at Christmastime or in September when he came out to get the child to take him to Knoxville * * *."

The husband and wife were the only witnesses introduced. As stated, the Chancellor, upon full consideration of their testimony, concluded that the husband "has not made a sincere, honest and reasonable effort toward reconciliation which has been arbitrarily refused," and he dismissed the petition.

■ While the hearing here is *de novo,* the Chancellor's decree is supported by a presumption of its correctness unless the evidence preponderates against it (T.C.A. sec. 27-303); and the burden is on the appellant husband to show that the evidence does preponderate against it. *Morrell v. Republic Fire Ins. Co.,* 168 Tenn. 137, 76 S.W. 2d 317; *Jackson v. Jackson,* 25 Tenn.App. 198, 154 S.W. 2d 797.

■ Moreover, the Chancellor's findings and conclusion of fact are entitled to "great weight" where, as here, he saw the witnesses face to face and heard them testify. "[T]he human atmosphere of the trial and the totality of the evidence" before the Trial Court cannot be reproduced in an appellate court, which sees only the written record (*Powell v. Streatham Manor Nursing Home,* [1935] A.C. 243, 257, 267). *Trice v. McGill,* 158 Tenn. 394,

13 S.W.2d 49; *Clardy v. Clardy,* 23 Tenn.App. 608, 136 S.W.2d 526; *Troutt v. Troutt,* 35 Tenn. App. 617, 250 S.W.2d 372.

█ Reviewing the evidence, in the light of these authorities, we think it does not preponderate against the Chancellor's decree, but fully supports his findings and conclusion of fact. (The actions of the man as detailed by his wife when they were at the son's graduation in effect knocks the props from the sincerity of the man's letters. This is merely one illustration of why the decree of the Chancellor should be sustained. The man did not deny these assertions of fact on the very issue here presented.) We must take it as an established fact that the husband has not made a sincere, honest and reasonable effort toward a reconciliation which has been unreasonably refused by the wife.

█ Such being the case, the husband is not entitled to an order relieving him of further payments to his wife, or to any modification of the decree for her separate maintenance. All the authorities agree that a mere offer of reconciliation by a husband made not in good faith, but for the purpose of defeating the wife's right to separate maintenance, must be denied that effect. *Cureton v. Cureton,* supra; *Rutledge v. Rutledge,* supra; Annotations, 77 Am.St. Rep. 242, 6 A.L.R. 51-56; 10 A.L.R.2d 510, 512.

### On Petition to Rehear

There has been filed herein a courteous, dignified and forceful petition to rehear. To all intents and purposes this petition though is nothing more than a reargument of what was in the original briefs and the argument made before the bar of this Court.

This petition questions our conclusion about the sincerity of the husband in the letters that he wrote his wife in trying to reach a reconciliation of their marital difficulties. We are unquestionably of the opinion, and especially from viewing the acts of this husband at the time of their meeting at the graduation of their son, that the husband was not sincere in his reconciliation efforts. Anyone reading the account of this affair after the letters referred to had been written will clearly and without a doubt, if they are unbiased in the matter, reach the conclusion that there was no sincerity in these letters but that they were written ostensibly for the purpose of trying to meet the terms of the decree so as to avoid future separate maintenance payments.

All that we have done in this decree, besides settling certain legal principles, was to remand the case to the Chancellor where continued jurisdiction is held pursuant to sec. 36-820, T.C.A., to determine the rights of these parties as they may happen in the future in light of what has gone on since the original decree.

We find nothing in this petition to cause us to change our mind in reference to the law or factual situation as is stated in the original opinion. For this reason the petition to rehear is overruled and the cause remanded to the Chancery Court for further proceedings as the facts and circumstances demand.

On Petition for Additional Counsel Fees

BURNETT, JUSTICE.

Counsel for Mrs. Folk have filed herein a petition to be allowed an additional fee as her solicitors for services performed in the Court of Appeals and in this Court.

We think that the proper place for this fee to be fixed is in the court of original jurisdiction, to-wit, the Chancery Court of Davidson County, wherein the case was originally heard. The cause was remanded to that court by this Court for further consideration of questions presented. Since the case is remanded to that court it is our conclusion that that court should fix these fees.

In determining compensation of attorneys the amount and character of services rendered, labor, time and trouble involved, character and importance of the litigation, amount of the money or value of the property involved, professional skill and experience called for, character and standing of the attorneys, are questions that should be determined by a court having original jurisdiction. Here all that we have is what the record shows that these attorneys have filed able briefs and made able arguments in both courts and they have pervailed on behalf of their client. This being true, it is our conclusion that the question of any additional fees should be taken up with the Chancellor on this remand, and if necessary proof may be heard as to what fees should be allowed. Of course, the allowance of these fees depends upon many things, to-wit, the ability of the defendant to pay, whether or not the defendant has been successful in his appeal, whether or not this appeal was made in good faith, whether or not there is a necessity that the man pay the fees rather than the woman, and any and all other considerations that a Chancellor may view under the particular facts and circumstances of each individual case.

It is for these reasons that the motion here to allow an additional fee is denied and the cause remanded

to the Chancery Court where proper consideration may be had by the Chancellor, taking into consideration all the facts and circumstances as above indicated. Normally when the Chancellor hears proof on the question of attorneys' fees and determines the matter he is in a much better position than anyone else to appraise the worth of these services, and where there is a difference of opinion among those testifying as to these services the allowance by the Chancellor will not be disturbed. *Bank of Commerce & Trust Co. v. Buckingham,* 144 Tenn. 344, 233 S.W. 668.