IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 18, 2006 Session

## LESLYN ELIZABETH MILLER BALLEW
v. JOHN MICHAEL BALLEW

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-04-1512-3     D. J. Alissandratos, Chancellor**

**No. W2005-00337-COA-R3-CV - Filed March 22, 2006**

In this appeal, we are asked to determine the validity of a consent judgment entered by the chancery court granting a divorce to the parties. At trial, the parties voluntarily submitted their case to mediation. At the conclusion of the mediation, the mediator dictated the settlement terms onto a tape recorder, and the parties acknowledged onto the tape recorder that these terms were the understanding of the parties. The chancery court found that this acknowledgment was a modification of the mediation agreement and that the parties entered into a settlement agreement. On appeal, the husband asserts that the chancery court erred finding a settlement agreement because the mediation agreement specifically required that the parties would not be bound unless a written, executed settlement agreement was entered into by the parties. Second, the husband contends that, even if an oral settlement agreement was effective against the parties in this case, he had properly repudiated the agreement to his wife and the chancery court before the chancery court entered its judgment. In addition, both parties have requested attorney's fees on appeal. We reverse and remand for further proceedings and decline to award attorney's fees to either party.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Barry J. McWhirter, Bradley W. Eskins, Memphis, TN, for Appellant

Kay Farese Turner, Martin W. Cash, Jr., Memphis, TN, for Appellee

# OPINION

## I. FACTS & PROCEDURAL HISTORY

On July 29, 2004, Leslyn Elizabeth Miller Ballew ("Wife" or "Appellee") filed for divorce from her husband, John Michael Ballew ("Husband" or "Appellant" or, collectively with Wife, the "Parties"). Thereafter, Husband filed an answer and counter claim for divorce. Instead of going to trial for their divorce, Husband and Wife entered into an agreement entitled "Matrimonial Mediation Agreement" ("MMA") where the Parties agreed to mediate their divorce and reduce the subsequent agreement to writing. After the Parties purportedly reached an amicable solution at the mediation and agreed to be divorced, the mediator verbally announced onto a tape recorder the terms of the settlement agreement instead of reducing the settlement agreement to writing as required by the MMA. When the mediator finished announcing the terms of the settlement agreement onto the tape recorder, the Parties and their respective counsel acknowledged on the tape recorder that the agreement as stated by the mediator was the understanding of the Parties.

Approximately one month after the mediation, Husband, through his counsel, informed Wife that he believed that no settlement agreement had been reached, and that, even if it had, he repudiated the agreement. During the month preceding Husband's repudiation, according to Wife, while Wife began separating the Parties' personal property that was to be divided according to the terms of the settlement agreement and continued to pay for Husband's weekly apartment and provide Husband support, Wife's counsel began drafting a marital dissolution agreement, a permanent parenting plan, an affidavit for Wife, a quit claim deed to convey Husband's interest in the marital home to Wife, and a final decree of divorce.

Thereafter, Wife filed a motion to enforce the settlement agreement with the chancery court in which she sought to have the terms of the settlement agreement that were recited by the mediator onto the tape recorder enforced. Husband filed a response to Wife's motion which stated that no agreement had been reached because the Parties never reduced their agreement to writing as required by the MMA, and, in the alternative, that if the chancery court found that an agreement had been reached, Husband was providing notice to the chancery court that he has repudiated any agreement between the Parties. The chancery court found that the settlement agreement existed and was enforceable, and, despite Husband's repudiation of the settlement agreement, entered a final divorce decree and permanent parenting plan based on the oral settlement agreement.

## II. Issues Presented

Appellant has timely filed his notice of appeal and presents the following issues for review:

1. Whether an alleged oral agreement reached at mediation that was not reduced to a signed writing and was repudiated prior to any judicial consideration is an enforceable contract;

2. Whether Appellant is entitled to attorney's fees and costs incurred as a result of this appeal.

Additionally, Appellee presents the following issue for review:

3. Whether Appellee is entitled to attorney's fees and costs incurred as a result of this appeal.

For the following reasons, we reverse the decision of the chancery court and remand for further proceedings. In addition, we decline to award attorney's fees to either Appellant or Appellee.

## III. Standard of Review

This Court reviews findings of fact by a trial court sitting without a jury under a *de novo* standard with a presumption of correctness for those findings. Tenn. R. Civ. P. 13(d) (2005). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness for the trial court's conclusions. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. Discussion

### A. Settlement Agreement

On appeal, Appellant asserts that the chancery court erred when it enforced a settlement agreement between the parties and entered a divorce decree based on that settlement agreement.

First, Appellant contends that the chancery court erred when it entered a divorce decree based on the Parties' oral agreement because the MMA specifically required that

> [n]o party shall be bound by anything said or done at the mediation unless a written statement is reached and executed by all necessary parties. If a settlement is reached, the agreement shall be reduced in writing in written form by the Mediator and in legal form by counsel for the parties. Each of the parties expressly agrees that they reserve their right to a trial in the event they are unable to reach a settlement of their issues.

At trial, the chancery court found that the Parties orally modified the above provision of the MMA to allow the Parties to enter into an oral settlement agreement.

Although the MMA stated that any settlement agreement had to be in writing in order to bind the Parties, the MMA did not have a provision requiring that any modification of the MMA had to be in writing.

"After a written contract is made, it may be modified by the express words of the parties in writing, as well as by parol." *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. Ct. App. 1990) (citing *Co-Operative Stores Co. v. U.S. Fid. Guar. Co.*, 195 S.W. 177, 180 (1917)). However, "[w]hether written or oral, modifications of written contracts must be with the consent of both parties." *Id.* at 92 (citing *V.L. Nicholson Co. v. Transcon Inv. & Pin. Ltd., Inc.*, 595 S.W.2d 474, 482 (Tenn. 1980). Further, "[t]he modification of a contract, being a new contract, requires consideration to support it." 17A C.J.S. *Contracts* § 411 (1999). "An oral contract changing the terms of a written contract must be of such specificity and directness as to leave no doubt of the intention of the parties to change what they previously solemnized by formal document." 17A C.J.S. *Contracts* § 412 (1999).

At trial, neither party presented evidence at trial as to the alleged oral modification of the MMA. Rather, the chancery court relied on statements of counsel as to what transpired at the mediation when rendering its decision.

"Statements of counsel are not evidence or a substitute for testimony, and judgment based upon neither evidence nor stipulation of the parties may be vacated if evidence is the basis of the holding." *Hathaway v. Hathaway*, 98 S.W.3d 675, 681 (Tenn. Ct. App. 2002) (citing *State v. Cleveland*, 959 S.W.2d 548, 555 (Tenn. 1997); *Metro. Gov't of Nashville v. Shacklett*, 554 S.W.2d 601, 605 (Tenn. 1977); *Valley Util. Dist. v. Cantwell*, No. M2001-00627-R3-CV, 2002 Tenn. App. LEXIS 30 (Tenn. Ct. App. Jan. 15, 2002)).

At the hearing on Appellee's motion to enforce the settlement agreement, counsel for the Parties stipulated that the mediator had relayed all the terms of the agreement onto the tape recorder and that the Parties acknowledged that these were the terms they had agreed upon at the mediation. These statements are insufficient to show that the Parties intended to modify the MMA.

However, "[m]anifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but the circumstances may show that the agreements are preliminary negotiations." RESTATEMENT (SECOND) OF CONTRACTS § 27 (1979). Thus,

> [p]arties who plan to make a final written instrument as the expression of their contract necessarily discuss the proposed terms of the contract before they enter into it and often, before the final writing is made, agree upon all the terms which they plan to incorporate

therein. This they may do orally . . . . It is possible thus to make a contract the terms of which include an obligation to execute subsequently a final writing which shall contain certain provisions. If parties have definitely agreed that they will do so, and that the final writing shall contain those provisions and no others, they have then concluded the contract.

*Id.* § 27 cmt. a. Further,

[i]t is quite possible for parties to make an enforceable contract binding them to prepare and execute a subsequent final agreement. In order that such may be the effect, it is necessary that agreement shall have been expressed on all essential terms that are to be incorporated in the document. That document is understood to be a mere memorial of the agreement already reached. If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; the so-called "contract to make a contract" is not a contract at all.

*Engenius Entm't, Inc. v. Herenton*, 971 S.W.2d 12, (Tenn. Ct. App. 1997) (quoting 1 Arthur L. Corbin et al., *Corbin on Contracts* § 2.8, at 133-34 (Rev. ed. 1993) (footnotes omitted)). In addition, "if either party knows or has reason to know that the other party regards the agreement as incomplete and intends that . . . until the whole has been reduced to another written form, the preliminary negotiations and agreements do not constitute a contract." RESTATEMENT (SECOND) OF CONTRACTS § 27 cmt. b (1979).

In this case, while the Parties intended to be bound only by a executed written agreement, the Parties stipulated at trial that they agreed on all essential terms, reaching a settlement. Thus, the Parties have made a contract, the terms of which include an obligation to execute a final, written agreement.[1]

Second, Appellant contends that if a settlement agreement did exist, Appellant properly repudiated the settlement agreement, precluding the entering of a consent judgment based on that settlement agreement.

As the Tennessee Supreme Court noted in *Harbour v. Brown for Ulrich*, 732 S.W.2d 598 (Tenn. 1987), "a valid consent judgment can not [sic] be entered by a court when one party

---

[1] We are mindful that part of the settlement agreement requires Appellant to sell his interest in the marital home to Appellee. Normally, the statute of frauds would bar an oral agreement for the sale of land. Tenn. Code Ann. § 29-2-101(4) (2000). "The statute of frauds, however, does not render oral contracts for the sale of land void *ab initio*. Instead, such contracts are merely voidable at the election of either party." *Anderson v. Hacks Crossing Partners*, 3 S.W.3d 482, 485 (Tenn. Ct. App. 1999) (citations omitted). "If one of the parties fails to raise the statute of frauds as a defense, . . . the court is required to enforce an oral contract for the sale of land." *Id.* at 485-86 (citations omitted). Here, at trial, neither Appellant nor Appellee raised the statute of frauds as a defense.

withdraws his consent and this fact is communicated to the court prior to entry of the judgment." *Id.* at 599 (citations omitted). However,

> [m]arital dissolution agreements are contracts. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001); *Wade v. Wade*, 115 S.W.3d 917, 924 (Tenn. Ct. App. 2002). They provide a vehicle for divorcing parties to, among other things, provide "for the equitable settlement of any property rights between the parties." *See* Tenn. Code Ann. § 36-4-103(b) (2001). While these contracts become absolutely binding and enforceable after approval by the trial court, this court has recognized that parties may be permitted to withdraw from these agreements before they have been approved by the court, as long as one or both parties have not relied on the agreement to their detriment. *Denbow v. Denbow*, 1996 Tenn. App. LEXIS 278, No. 02A01-9410-CH-00238, 116 WL 243894, at *1-2 (Tenn. Ct. App. May 9, 1996) (No Tenn. R. App. P. 11 application filed); *Sutton v. Sutton*, 1994 Tenn. App. LEXIS 171, No. 03A01-9309-CH-00315, 1994 WL 108927, at *1 (Tenn. Ct. App. Mar. 31, 1994) (No Tenn. R. App. P. 11 application filed).

*Altman v. Altman*, No. M2003-02707-COA-R3-CV, 2005 Tenn. App. LEXIS 207, at *5-6 (Tenn. Ct. App. Apr. 7, 2005) (perm. app. denied); *see also Nahon v. Nahon*, 2005 Tenn. App. LEXIS 780, at *11-12 (Tenn. Ct. App. Dec. 14, 2005) (no perm. app. filed).

In this case, Appellant, through his counsel, informed Appellee that, if any settlement agreement had been reached, he was expressly repudiating the agreement. Appellant communicated this repudiation to the chancery court in his memorandum of law in response to Appellee's motion to enforce the settlement agreement. On appeal, Appellee concedes this fact. However, Appellee also contends that she partially performed to her detriment her duties pursuant to the settlement agreement.

In her motion to enforce the settlement agreement at trial and in her brief on appeal, Appellee has alleged different actions that she completed to partially perform the settlement agreement to her

detriment.[2] Appellee presented no evidence at trial, however, to support her allegations that she partially performed her obligations under the settlement agreement.

"Allegations in pleadings are not, of course, evidence of the facts averred. Unless such facts are admitted or stipulated, they must be proved by documents, affidavits, oral testimony or other competent evidence." *Hillhaven Corp. v. State*, 565 S.W.2d 210, 212 (Tenn. 1978). Thus, we cannot say that Appellee detrimentally relied on the settlement agreement as to prevent Appellant from repudiating the agreement. Accordingly, we reverse the decision of the chancery court and remand for further proceedings.

### B.    Attorney's fees on Appeal

Both Appellant and Appellee have requested attorney's fees on appeal. "Attorney's fees are only awarded if provided for by contract, statute, or a recognized ground of equity." *Parchman v. Parchman*, No. W2003-01204-COA-R3-CV, 2004 Tenn. App. LEXIS 768, at *15 (Tenn. Ct. App. Nov. 17, 2004) (quoting *Austin Powder Co. v. Thompson*, No. 03A01-9607-CV-00229, 1996 Tenn. App. LEXIS 805, at *5 (Tenn. Ct. App. Dec. 16, 1996)).

Neither Appellant nor Appellee has requested attorney's fees for frivolous appeal pursuant to section 27-1-122 of the Tennessee Code. Instead, it appears that both Appellant and Appellee have requested attorney's fees based on the fact that this is a divorce case. "In divorce cases the recovery of attorney's fees is permitted by statute, which provides that a spouse seeking enforcement of an alimony or custody award may be granted attorney's fees." *Id.* (citing Tenn. Code Ann. § 36-5-103(c) (2003)).

This appeal, however, does not deal with the enforcement of the provisions of a divorce decree. Rather, this appeal deals with the validity of the consent judgment granting divorce. "The decision of whether to award attorney's fees on appeal rests solely within the discretion of this Court." *Id.* at *15-16 (citing Tenn. Code Ann. § 36-5-103(c) (2003); *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). As such, when this Court considers whether to award attorney's fees on appeal, we must be mindful of "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered." *Dulin v. Dulin*, No.

---

[2] We are mindful that, in addition to the actions alleged in her motion to enforce the settlement agreement, Appellee has also listed several actions by Appellant that she alleges constitute performance of the settlement agreement. However, Appellant performed these actions pursuant to the divorce decree entered by the chancery court. Appellee asserts that because Appellant failed to stay the judgment of the chancery court and has complied with the divorce decree in all respects, the oral settlement agreement is enforceable. It was Appellant's choice to stay the decision of the chancery court. Appellant was not required to stay the chancery court's decision. Further, we decline to hold that Appellant's compliance would constitute performance on his part to form a contract. Since Appellant chose not to stay the chancery court's decision, he would have been in contempt had he not complied with the chancery court's order. Given that choice, we cannot conclude that his actions constituted partial performance to preclude him from stating that a binding settlement agreement was not reached.

W2001-02969-COA-R3-CV, 2003 Tenn. App. LEXIS 628, at *26-27 (Tenn. Ct. App. Sept. 3, 2003) (citing **Folk v. Folk**, 210 Tenn. 367, 357 S.W.2d 828, 829 (Tenn. 1962)); **see also Parchman**, 2004 Tenn. App. LEXIS 768 at *15-16. In this case, we find it equitable to decline to award both Appellant and Appellee attorney's fees on appeal.

## V. CONCLUSION

For the aforementioned reasons, we reverse the decision of the chancery court and remand for further proceedings. Further, we decline to award attorney's fees to either Appellant or Appellee. Cost of this appeal are taxed to Appellee, Leslyn Elizabeth Ballew, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE