FILED

05/22/2025

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 22, 2025 Session

## STATE OF TENNESSEE v. JACOREY TYVON FORTE

**Appeal from the Criminal Court for Hamilton County**
**No. 313375   Boyd M. Patterson, Judge**

_____

**No. E2024-00823-CCA-R3-CD**

_____

The Defendant, Jacorey Tyvon Forte, was found guilty by a Hamilton County jury of aggravated robbery, and he received a sentence of eleven years in prison. On appeal, the Defendant contends that the evidence presented at trial was insufficient to establish his identity as one of the perpetrators of this offense. Following our review, we affirm the Defendant's conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., and CAMILLE R. MCMULLEN, P.J., joined.

John G. McDougal, Chattanooga, Tennessee, for the appellant, Jacorey Tyvon Forte.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Coty G. Wamp, District Attorney General; and AnCharlene Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.     FACTUAL AND PROCEDURAL HISTORY

On the evening of October 15, 2021, Joseph Massey and Kim Willoughby were working at a Dollar General in Chattanooga. Ms. Willoughby, the shift manager, was completing paperwork in the store office. Mr. Massey, believing the store was empty of customers, took a break from the register area to have a snack and to check on Ms. Willoughby, who had not been feeling well. Although neither employee was watching for customers, they were actively listening for anyone to enter the store in order to greet them.

At approximately 6:10 p.m., Mr. Massey heard a voice call out from the register area. He left the office and moved toward the store's registers where he encountered two young Black males. The first male pointed a handgun at Mr. Massey and demanded the money from the registers and safe. This first male, the shorter of the two and with a darker skin tone, was wearing black clothing, orange gloves, and a white bandage around his head concealing his facial features. The second male, standing near the entrance to the store, appeared to be on "lookout," and he was wearing gray sweatpants, a coat, and a surgical mask. Though Mr. Massey observed only the first male with a handgun, the surveillance video revealed that both men were armed. After Mr. Massey complied with the demand for money, the first male placed the money inside a Dollar General bag, and both men fled the building.

Simultaneous with these events, Ms. Willoughby heard the commotion from the office and watched the encounter on the security monitors. Once the men fled the building, she ran out of the office, telephoned the police, and locked the doors. Ms. Willoughby testified that although she did not see the men drive off from the scene, she assumed the men drove away in a black Ford Escape from watching the closed-circuit television in the office because that was the only car she had observed in the parking lot besides her own. Despite testifying at the preliminary hearing that she could identify the license plate on the car as being from Tennessee, at trial, Ms. Willoughby testified that she was not sure what state had issued the license plate.

As part of the investigation by the Chattanooga Police Department, Detective Giuseppe Troncone and Officer Shane Martin spoke with the employees and reviewed the surveillance video from the store. It was determined from the video that the vehicle Ms. Willoughby had observed was a black Ford Escape manufactured between 2013 and 2019. The vehicle appeared to be a "premium edition" with the distinguishable features of upgraded rims, chrome accents, and a "roof rack." The vehicle's rear passenger window also looked distinctively different than the other windows, appearing "flat" in color, and it did not "reflect like [] glass would[.]" Det. Troncone issued a "be on the lookout" ("BOLO") for a vehicle matching that description.

The following day, October 16, 2021, Officer Martin observed a vehicle matching the description of the BOLO with a Florida license plate. The vehicle was at an intersection approximately one thousand feet from the Dollar General when Officer Martin first observed it. Officer Martin ran the license plate number through the appropriate databases and discovered the vehicle had been reported as stolen from Florida. Officer Martin radioed dispatch to request assistance in apprehending the vehicle.

Once other officers arrived, Officer Martin moved behind the Defendant and activated his emergency blue lights. The Defendant's vehicle did not stop. Officer Martin

then engaged his siren, but there continued to be no response from the Defendant. Officer Martin pursued the Defendant for approximately six to eight minutes during which the Defendant continued to drive, failed to observe traffic lights, and threw an unidentifiable object from the vehicle. Ultimately, the Defendant collided with a law enforcement vehicle, bringing the Ford Escape to a stop.

An examination of the Defendant's vehicle revealed that it was a 2014 Ford Escape with upgraded rims and a luggage rack, and the rear passenger window of the vehicle had been replaced with a garbage bag. Also, a surgical mask, similar to the one seen in the video worn by the second male, was discovered hanging from the rearview mirror.

While placing the Defendant under arrest, Officer Martin observed that the Defendant was wearing gray sweatpants with a stain on the right pant leg and black slippers with white lining. The Defendant was transported to the police station where he was questioned by Det. Troncone. During the interview, the Defendant denied being at the Dollar General the day before, but he confirmed that he had been the only person in possession of the vehicle the previous day. Further review of the surveillance footage by Det. Troncone revealed a stain on the right pant leg of the second male's gray sweatpants and that the male had been wearing black slippers with white lining.

On June 22, 2024, the jury convicted the Defendant of aggravated robbery. *See* Tenn. Code Ann. § 39-13-402(a)(1). The trial court denied the Defendant's motion for new trial. This timely appeal followed.

## II.    ANALYSIS

On appeal, the Defendant argues that the evidence presented at trial was insufficient to support his conviction for aggravated robbery. Specifically, the Defendant argues that the evidence at trial was insufficient to prove his identity as the second male involved in the robbery. The State contends that sufficient circumstantial evidence was presented to identify the Defendant as the second male. We agree with the State.

The United States Constitution prohibits the states from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. A state shall not deprive a criminal defendant of his liberty "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In determining whether a state has met this burden following a finding of guilt, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because a guilty verdict removes the presumption of innocence

and replaces it with a presumption of guilt, the defendant has the burden on appeal of illustrating why the evidence is insufficient to support the jury's verdict. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). If a convicted defendant makes this showing, the finding of guilt shall be set aside. Tenn. R. App. P. 13(e).

"Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Appellate courts do not "reweigh or reevaluate the evidence." *Id*. (citing *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978)). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The law provides this deference to the jury's verdict because

> [t]he jury and the [t]rial [j]udge saw the witnesses face to face, heard them testify, and observed their demeanor on the stand, and were in much better position than we are, to determine the weight to be given their testimony. The 'human atmosphere of the trial and the totality of the evidence' before the court below cannot be reproduced in an appellate court, which sees only the written record[.]

*Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963) (quoting *Folk v. Folk*, 355 S.W.2d 634, 637 (1962)). Therefore, on appellate review, "the State is entitled to the strongest legitimate view of the trial evidence and all reasonable or legitimate inferences which may be drawn therefrom." *Cabbage*, 571 S.W.2d at 835.

The only issue properly before us is the identity of the Defendant as the perpetrator.[1] The identity of the perpetrator is an essential element of any crime. *State v. Miller*, 638 S.W.3d 136, 158 (Tenn. 2021) (citations omitted). The State has the burden of proving the identity of the defendant as the perpetrator beyond a reasonable doubt. *State v. Sneed*, 908 S.W.2d 408, 410 (Tenn. Crim. App. 1995) (citing *White v. State*, 533 S.W.2d 735, 744 (Tenn. Crim. App. 1975)). Identity is a question of fact for the jury's determination upon consideration of all competent proof. *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005).

---

[1] In the State's appellate brief, it notes that the Defendant did not challenge the sufficiency of the evidence supporting the elements of aggravated robbery in his principal brief. The Defendant in his reply brief contends that he is, in fact, making such a challenge on appeal. However, aside from again listing the statutory elements of the offense, his sufficiency argument still centers on identity. Regardless, an appellant may not advance a new argument to support an issue in a reply brief. *See Caruthers v. State*, 814 S.W.2d 64, 69 (Tenn. Crim. App. 1991). Moreover, the evidence at trial was certainly sufficient to prove the elements of aggravated robbery. *See* Tenn. Code Ann. §§ 39-11-402 (defining criminal responsibility); -13-402(a)(1) (listing the elements of aggravated robbery).

As with any sufficiency analysis, the State is entitled to the strongest legitimate view of the evidence concerning identity contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *See id*. (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)); *see also Miller*, 638 S.W.3d at 158-59.

At trial, the State presented evidence that the clothing worn by the second male in the surveillance video, gray sweatpants with a stain on the right pant leg and black slippers with white lining, was distinctive and consistent with the clothing worn by the Defendant at the time he was arrested. In addition, the surgical mask found in the Defendant's vehicle was consistent with the surgical mask worn by the second male in the robbery.

The State also introduced evidence that the vehicle the Defendant was driving the day after the robbery shared the distinctive characteristics of the vehicle seen on the surveillance video. Det. Troncone testified that the Defendant's vehicle was a 2014 black Ford Escape with upgraded rims and a luggage rack, and the rear passenger window had been replaced with a garbage bag. Also, Officer Martin first observed the Defendant's vehicle at an intersection only one thousand feet away from the Dollar General that had been robbed by persons traveling in that vehicle the day before. Finally, the Defendant fled from Officer Martin for six to eight minutes and disregarded traffic signals as well as Officer Martin's emergency equipment. The Defendant's flight allows the jury to infer his guilt. *See Rogers v. State*, 455 S.W.2d 182, 187 (Tenn. Crim. App. 1970).

The Defendant points to Ms. Willoughby's testimony at the preliminary hearing wherein she stated the Ford Escape had a Tennessee license plate, while the vehicle the Defendant was driving had a Florida license plate. By the time of trial, Ms. Willoughby could not recall which state issued the license plate on the offenders' vehicle. The jury heard this conflict in Ms. Willoughby's account and still resolved the factual issue in favor of the State. *See Bland*, 958 S.W.2d at 659.

The Defendant further contends that no employee of the Dollar General identified him as the perpetrator and that, when he was arrested, he did not possess the gun used in the robbery or the proceeds of the robbery. However, the jury heard testimony from Officer Martin that the Defendant threw something from his vehicle during the chase. Importantly, we reiterate that it was the jury's prerogative to weigh these circumstances, and we do not reweigh the evidence on appeal. *See id.*

Viewing the entirety of the evidence in the light most favorable to the State, a rational jury could find beyond a reasonable doubt that the Defendant was the second male who committed the robbery of the Dollar General. Therefore, the evidence was sufficient to sustain a conviction for aggravated robbery. The Defendant is not entitled to relief.

## III. CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

 s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE