# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 23, 2012 Session

## DANIEL J. VELEZ v. CHRISTY M. VELEZ

**Appeal from the Circuit Court for Montgomery County**
**No. MCCCCVDV101754      Michael R. Jones, Judge**

---

**No. M2011-01949-COA-R3-CV - Filed July 31, 2012**

---

Mother appeals the parenting plan adopted by the trial court, the award of child support, alimony and the allocation of the federal income tax dependent exemptions to Father. We affirm the trial court's decision regarding the parenting plan and allocation of the federal income tax exemption. Finding error with the amount of income the court imputed to Mother, and what appears to be an error regarding the cost of insurance, we reverse the award of child support and remand with instructions to impute Mother's income based on the federal minimum wage and to recalculate the child support award in accordance with this opinion. We also hold that the trial court erred in denying Mother rehabilitative alimony, and therefore reverse and remand the issue of alimony to the trial court for a determination of the appropriate sum and duration of rehabilitative alimony.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., and BEN H. CANTRELL, SR. J., joined.

Jon S. Jablonski, Nashville, Tennessee, for the appellant, Christy M. Velez.

Michael K. Williamson, Clarksville, Tennessee for the appellee, Daniel J. Velez.

## OPINION

The parties, Daniel Velez ("Father") and Christy Velez ("Mother"), were married for twelve and one-half years, and have two minor children from the marriage. In September 2010, Daniel Velez filed for divorce in the Montgomery County Circuit Court citing irreconcilable differences. Mother filed an answer and counter-complaint seeking a divorce

on the grounds of irreconcilable differences and inappropriate marital conduct, and seeking to be named the primary residential parent of the parties' two children.

During the majority of the marriage, Father was in the United States Navy and at times deployed overseas, until his discharge in October 2008, following a period of paid disability for post-traumatic stress disorder. Mother, who has a high school education, was predominantly a stay-at-home mom, but occasionally worked at minimum wage jobs. At the time of separation, the parties resided in Montgomery County. The parties' son, who was seven at the time of separation, attended a private school, Clarksville Academy. Their daughter, who was three, attended a private day-care facility.

The divorce hearing occurred on March 18, 2011, and April 12, 2011. Father testified that he was employed at Military Systems Group in Nashville, Tennessee, and made $70,000 a year. Father was also entitled to performance-based bonuses, and at the time of the hearing had received a $2,500 signing bonus, a $500 fourth-quarter bonus, and a $1,000 bonus. Father was also receiving $1,355 in Social Security benefits and $1,600 in military disability, which was expected to end in June of 2011. Father admitted to a post-separation adulterous affair.

Father lived with them during the pendency of the divorce and they were present when he cared for the children during the weekends he had custody. Both paternal grandparents testified that Father was a good parent. They also testified that they had seen both Mother and Father verbally abuse each other; however, they had only witnessed Mother be physically abusive during an altercation that arose during the exchange of marital property.

At the hearing, Mother testified at length to Father's poor role model as a parent. Mother testified that she was the primary care-giver throughout the children's lives, including when Father was present. Mother testified that Father was verbally abusive towards her, often in front of the children. Mother, who was not employed at the time of the hearing, testified that she wished to return to school to obtain a degree in occupational therapy and had enrolled in Brown Mackie College, which was only twenty minutes from her home. She testified that it would take six to seven years to complete her degree at a cost of $43,000 for the first three years and $60,000 for the second half of the education. Mother's aunt, Debra Butts, and a friend of Mother and Father also testified.

The trial court issued its Final Divorce Decree on May 4, 2011, granting Mother a divorce on the ground of Father's inappropriate marital conduct. The trial court set Husband's income at $7,433.00 per month. The trial court declined to include Father's bonuses in his salary calculation stating it was too speculative, however, the court included a requirement that Father should immediately notify Mother of any bonuses that he received.

Though Mother was not employed, the trial court imputed to Mother a salary of $1,642.00 per month.[1] The trial court denied Mother's request for rehabilitative alimony but awarded her $25,000 in alimony in solido and $5,000 for attorney's fees. The trial court found the parties had joint assets of $160,996.80, of which $25,000 was advanced to Mother during the pendency of the proceedings.[2] Following the deduction of the parties' federal tax liabilities, the court found remaining assets of $125,741.80. The trial court awarded Mother $62,870, and $32,870.90 to Father.[3] Each party retained their respective IRAs and was awarded their vehicle.

The Permanent Parenting Plan, entered on June 6, 2011, named Mother as the primary residential parent. The parties were given "shared and equal parenting time" to be exercised from 6:00 p.m. Sunday to Sunday on an alternating weekly basis. During the week that a parent was not exercising the predominant share of visitation, that parent was granted visitation on Wednesday from 4:00 to 8:00 p.m. The court denied Mother's request for a right of first refusal, stating that if either party was unable to be present for their children, it will be up to that parent to provide care through another suitable person. The parents were given equal parenting time over spring break, Christmas break, and fall break. The day-to-day schedule was to apply during summer vacations. Father was to claim both children on the federal tax exemption. Father's child support was set at $586 per month; however, the court ordered that it would increase to $866 when Mother's Social Security disability ceased. Mother filed a timely appeal.

**ANALYSIS**

I. PARENTING PLAN

Mother contends that the trial court erred in its application of the factors set forth in Tennessee Code Annotated § 36-6-106 and based upon this adopted a parenting plan that was not in the best interests of the children. Mother argues that the parenting plan she submitted

---

[1]The trial court arrived at this figure by multiplying $8.00 per hour by 40 hours a week for fifty-two weeks divided by twelve months, which equals $1,386.67 per month, and adding $255 per month believing this was the amount of Mother's social security benefit. The total of these two figures is $1,642.00. We note, however, as is discussed elsewhere in this opinion, that Mother's Social Security benefit was $225 per month, not $255 per month.

[2]Mother testified that she used this money to pay for furniture and clothing for the children, for additional health care costs not covered by insurance, and for a substantial amount of her attorney's fees.

[3]Wife's award of alimony in solido and attorney's fees was awarded out of the property division.

should be adopted, which includes the right of a first refusal to care for the children when the other parent is unable to personally provide care.

This court reviews decisions in divorce cases de novo with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990). Moreover, appellate courts are reluctant to second-guess a trial court's determination regarding parenting schedules.[4] *See Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). "Trial courts have broad discretion in devising permanent parenting plans and designating the primary residential parent. In reaching such decisions the courts should consider the unique circumstances of each case." *Burton v. Burton*, No. E2007-02904-COA-R3-CV, 2009 WL 302301, at *2 (Tenn. Ct. App. Feb. 9, 2009) (citing *Parker*, 986 S.W.2d at 563); *see also Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001).

Trial courts have broad discretion to fashion parenting plans that best suit the unique circumstances of each case. *See Parker*, 986 S.W.2d at 563. Furthermore, it is not the role of the appellate courts to "tweak [parenting plans] . . . in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). Decisions regarding parenting schedules often hinge on subtle factors, such as the parents' demeanor and credibility during the proceedings. *Adelsperger*, 970 S.W.2d at 485. Thus, a trial court's decision regarding a permanent parenting plan will be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

The trial court adopted the parenting plan submitted by Father, which provided shared and equal parenting time and named Mother as the primary residential parent with joint decision-making between the parties. Mother contends the trial court incorrectly analyzed the factors in Tennessee Code Annotated § 36-6-106. We respectfully disagree.

The trial court found that Tennessee Code Annotated § 36-6-106(2), "[t]he disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver," slightly favored Mother crediting her with the fact that she provided most of the necessary care while the Father was in service. Mother, however, argues that this factor "heavily" weighs in her favor and points to testimony by herself and by her aunt that Father

_____

[4]Older decisions from our courts refer to custody or visitation agreements, however, we now refer to such arrangements as parenting plans or parenting schedules; the cases cited, however, remain on point for the substantive law.

refused to provide care for the children even when he was home on disability. Mother also argues that Tennessee Code Annotated § 36-6-106(4) does not favor both parents equally, but favors Mother because at the time of the hearing Father was living at his parents' home and did not have a residence of his own.

Although Mother points to the testimony of herself and her aunt in support of her argument that Father was not an active or supportive parent, the trial court, while not making a specific credibility finding, clearly did not put much credence in their testimony. Instead, the trial court obviously found the testimony of Father and the paternal grandparents more credible.

The evidence in the record supports the trial court's finding that both parents care for their children and are equally capable in providing support for the children. As we noted earlier, decisions regarding parenting schedules often hinge on subtle factors, such as the parents' demeanor and credibility during the proceedings. *Adelsperger*, 970 S.W.2d at 485. The trial court is in the best position to evaluate those subtle factors, and therefore "a permanent parenting plan will be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88. In its opinion, the trial court found that "neither party is able to see the truth" and that both parents seemed more eager to downgrade each other than consider the best interests of the children. The trial court chose to award shared and equal parenting time, and based upon our de novo review of the record, we find nothing to indicate that the trial court abused its discretion in adopting a parenting plan that provided shared and equal parenting time or that the adoption of such a parenting plan was not in the best interests of the children; further, we find no reason to disturb the trial court's denial of the right of first refusal.

## II. CHILD SUPPORT

The trial court set Father's child support obligation at $1,036 per month minus the $450 for Social Security benefits received by Mother for an award of $586; this amount would increase to $866 at the time that Mother's Social Security benefits were discontinued. The trial court set Father's income at $9,238.33 based upon his salary at Military Systems Group, his military disability, and Social Security benefits. The trial court specifically declined to include Father's bonuses in its calculation finding there was not a sufficient history of bonuses to include it in the calculation. Mother argues that the trial court erred in its calculation of Father's child support obligation and in the allocation of the federal income tax exemption. Mother argues that the trial court erred by excluding evidence of Father's bonuses from work, imputing a salary of $8.00 an hour to her, and excluding work-related child care expense from Mother's calculation.

Broad discretion is afforded the trial court in its child support determinations, and that discretion is bounded on all sides by the child support guidelines. *Smith v. Darmohray*, No. M2003-00236-COA-R3-JV, 2004 WL 904095, at *4 (Tenn. Ct. App. Apr. 27, 2004) (citing *Butler v. Butler*, 680 S.W.2d 467 (Tenn. Ct. App. 1984)). We review the record de novo with a presumption that the court's factual findings are correct, absent a showing that the evidence preponderates to the contrary. Tenn. R. App. P. 13(d) *see Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000).

## A. Father's Bonuses

Mother contends the trial court erred by not including Father's bonuses in calculating his annual income. We find no error in the trial court's exclusion of Father's bonuses in the calculation of his income. While Mother is correct that the Child Support Guidelines, Tenn. Comp. R. & Reg. 1240-2-4-.04(3)(a)(v), include bonuses as gross income for the purpose of the child support obligation, the evidence in the record only indicated that Father had received a few bonuses and that these bonuses were not guaranteed in the future. The largest bonus for $2,500 was a one-time signing bonus. Thus, we find no error with the trial court's conclusion that Father's bonuses, at this time, are too speculative for inclusion as income.

## B. Mother's Imputed Income

Mother contends the trial court erred in imputing an income of $8.00 per hour. The undisputed testimony in the record was that Mother was unemployed and that her only work experience was at sporadic minimum-wage jobs. The current minimum wage is $7.25 an hour. 29 U.S.C. § 206. There is no evidence in the record that Mother has earned or would be able to obtain employment that paid more than minimum wage. The evidence to the contrary is that she has limited work experience, a high school education, and never made more than minimum wage.

The trial court found that Mother was under-employed, a finding with which we agree; however, the trial court imputed an income greater than what the evidence indicated Mother would be able to earn. Based upon the evidence in this record, we find that Mother's imputed income should be based upon the federal minimum wage, which is $7.25.

We also note that the trial court erred by finding that Mother's Social Security income was $255 per month. The record reveals, as Mother correctly asserts, that the evidence introduced at trial was that the Social Security benefit was $225 per month, not $255. Thus, on remand, the correct amount, assuming Mother still receives this benefit, should be used in calculating child support.

### C.  Work-Related Child Care Expenses

Mother contends the trial court erred in failing to include a work-related day care expense in imputing a salary to her. It appears from this record that the decision was due to the fact that Mother was not employed at the time of trial and there was no evidence that she had incurred work-related child care expenses. Thus, we find no error with that decision. However, based upon the trial court's imputation of a salary, Mother will likely seek employment. Once Mother obtains employment, or it is shown that she is attending classes and incurring a child-care expense, she would be entitled to an award for such expenses pursuant to the Child Support Guidelines, s*ee* Tenn. Comp. R. and Reg.1240-2-4-.04(8)(c)(1), at which time she may petition the court to claim those expenses.

### D.  Health Insurance Expense of Father

Mother also states that the trial court erroneously allocated to Father a sum of $64 for the children's health insurance. During his testimony, Father indicated the cost for the children's health insurance was $496 per year, which represents a monthly healthcare expense of $41.33, not $64. Being uncertain whether $64 is or is not the correct amount, on remand, we ask the trial court to identify the correct amount and apply it to determine the appropriate child support amount.

### E.  Federal Income Tax Exemption

Mother contends the trial court erred by allocating the federal income tax exemption for the children to Father. The Tennessee Child Support Guidelines, Tenn. Comp. R. & Reg. 1240-2-4-.03(6)(b)(2)(ii) provide an assumption that the primary residential parent should claim the tax exemption for the child, however, this decision is discretionary and the trial court may choose which parent to allocate the income tax exemption. *Farmer v. Stark*, No. M2007-01482-COA-R3-CV, 2008 WL 836092, at *9 (Tenn. Ct. App. Mar. 27, 2008) (quoting *Chandler v. Chandler*, No. W2006–00493–COA–R3–CV, 2007 WL 1840818, *9 (Tenn. Ct. App. June 28, 2007)) ("[T]he decision of a trial court regarding the allocation of exemptions for minor children is discretionary and should rest on facts of the particular case."). We find no abuse of discretion in allocating the income tax exemptions to Father.

Based upon the foregoing, we reverse the amount of the child support award and remand for a revised calculation in accordance with the above findings and the applicable child support guidelines.

III. ALIMONY

Mother contends that the trial court failed to analyze the statutory factors set forth in Tennessee Code Annotated § 36-5-121, specifically the two "paramount considerations" of the disadvantaged spouse's need and the obligor spouse's ability to pay and that it erred in failing to award her rehabilitative alimony of $3,023.33 per month for six years while she attends school to become an occupational therapist.

The trial court awarded Mother $25,000 in alimony in solido and $5,000 for her attorney's fees, but denied her request for rehabilitative alimony. The court stated that while Father has the greater earning capacity, it found that it was granting Mother sufficient alimony in solido for her to begin her education. Although Mother testified that she had enrolled in Brown Mackie College and testified to the cost of her future education, and while the trial court did not specify which factors under Tennessee Code Annotated § 36-5-121(i) it considered when awarding alimony, the court found Mother's evidence insufficient to justify an award of rehabilitative alimony, and instead, the trial court awarded Mother a lump sum of alimony.[5]

Trial courts are afforded wide discretion in determining whether there is a need for spousal support, and if so, the nature, amount, and duration of the award. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (citing *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)). Absent an abuse of discretion, a trial court's decision to award spousal support will not be disturbed on appeal. *Id.* An abuse of discretion occurs when the trial court "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn.2010)). The appellate court may not substitute its judgment for that of the trial court; rather, it should presume that the trial court's alimony decision is correct and review the evidence in the light most favorable to that decision. *Id.* at 105–06 (citing *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335). The deference to trial court decisions regarding spousal support follows from the recognition that such decisions are "factually driven" and involve "the careful balancing of many factors." *Id.* (citing *Kinard*, 986 S.W.2d at 235).

---

[5]The court stated that it was not impressed with Mother's testimony concerning her education because she failed to mention the possibility of any grants or scholarships, failed to testify whether this was an online education, and did not consider working and going to school.

In *Gonsewski*, our supreme court emphasized the strong preference for short-term spousal support over long-term spousal support. *Gonsewski*, 350 S.W.3d at 109. The court further recognized that the legislative preference was for support aimed at the rehabilitation of the disadvantaged spouse in order to "achieve self-sufficiency where possible." *Id*. (citing Tenn. Code Ann. § 36-5-121(d)(2)-(3); *Bratton*, 136 S.W.3d at 605; *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003)). Rehabilitative alimony is "intended to assist an economically disadvantaged spouse in acquiring additional education or training which will enable the spouse to achieve a standard of living comparable to the standard of living that existed during the marriage or the post-divorce standard of living expected to be available to the other spouse." *Id*. at 108 (citing *Robertson*, 76 S.W.3d at 340-41; *Isbell v. Isbell*, 816 S.W.2d 735, 738-39 (Tenn. 1991)). The court further noted that "[c]arefully adhering to the statutory framework for awarding spousal support, *both in terms of awarding the correct type of support* and for an appropriate amount and time, fulfills not only the statutory directives *but also alimony's fundamental purpose of eliminating spousal dependency where possible*." *Id*. at 110.

When determining whether to award alimony and the "nature, amount, length, and manner of payments" courts are required to consider the factors set forth at Tennessee Code Annotated § 36-5-121(i). *Id*. at 109. These include but are not limited to the relative earning capacity, obligations, needs, and financial resources of each party, the relative education and training of each party, duration of the marriage, the age, mental condition and physical condition of each party, the separate assets of each party, provisions made with regard to the marital property, the standard of living of the parties established during the marriage, the extent to which each party has made such tangible and intangible contributions to the marriage, the relative fault of the parties, and such other factors as are necessary to consider the equities between the parties. *See* Tenn. Code Ann. § 36–5–121(i). The two factors considered most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Gonsewski*, 350 S.W.3d at 110 (citing *Riggs*, 250 S.W.3d at 457; *Bratton*, 136, S.W.3d at 605; *Robertson*, 76 S.W.3d at 342; *Burlew*, 40 S.W.3d at 470).

In Mother's prayer for relief in her counter-complaint, she requested "spousal support, both temporarily and permanently."[6] At trial, however, Mother specifically requested rehabilitative alimony for the express purpose of obtaining an education in occupational therapy and testified that she had enrolled in Brown Mackie College and testified to the length and cost of the program. Despite the trial court's finding that Mother had not inquired

---

[6]"While it is not required by our Rules of Civil Procedure, we point out that it may be prudent for parties to set forth in their pleadings the specific types of alimony sought. It would also be helpful for trial courts to make specific reference to the particular types of alimony considered and ruled upon, including the factors supporting the ruling(s)." *Gonsewski*, 350 S.W.3d at 114 n.11.

into any sort of financial aid, Mother testified that she had looked into obtaining assistance based upon Father's eligibility through his military service for the G.I. bill, but she needed forms that only Father could obtain to determine if she qualified. As the trial transcript reveals, Mother's counsel requested that the trial court order Father to turn over this documentation in order to ascertain whether Mother qualified.

In this case, Mother is clearly the economically disadvantaged spouse. She has only a high school education and she has limited work experience at minimum wage jobs, mainly in retail. Her imputed income is based upon minimum wage, which is $7.25 per hour. Assuming she is able to obtain employment and is able to work 40 hours a week for 52 weeks a year, she would make a mere $15,080 annually; Father's annual income is in excess of $70,000. It is also relevant that Mother's economic disadvantage is partly due to her contribution as a stay-at-home mother while Father was deployed. *See* Tenn. Code Ann. § 36–5–121(i)(10) (stating in determining the amount and type of alimony to award, the court should consider "[t]he extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;").

The education and training of each party and the necessity of a party to secure further education and training in order to improve that party's earning capacity to a reasonable level is a factor for consideration in the award of alimony. Tenn. Code Ann. § 36-5-121(i)(2). Further, the legislature recognized that the contributions of both a wage-earner and a homemaker are to be considered in determining an award of alimony. Tenn. Code Ann. § 36-5-121(i)(10). Our Supreme Court in *Gonsewski* emphasized the great importance of focusing on the economically disadvantaged spouse's need stating: "We emphasize that, '[w]hile there is no absolute formula for determining the amount of alimony, 'the real need of the spouse seeking the support is the single most important factor.'" *Gonsewski*, 350 S.W.3d at 115 (quoting *Aaron v. Aaron,* 909 S.W.2d 408, 410 (Tenn.1995) (quoting *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App.1989))). In contrast, Father exited his military career at an E-6 level and was able to obtain employment with his experience at a salary of $70,000, with the potential for additional earnings. *See* Tenn. Code Ann. § 36–5-121(i)(1) (setting forth the "relative earning capacity, obligations, needs, and financial resources of each party. . .." as a factor for consideration in the award of alimony). We also note that this was a marriage of long-duration, as the parties were married for almost thirteen years. *See* Tenn. Code Ann. § 36-5-121(i)(3).

Instead of awarding rehabilitative alimony, the trial court awarded $25,000 of alimony in solido; however, the court did not explain its reasoning nor did it analyze the relevant statutory factors. The court simply stated that it believed this was a sufficient amount for

Mother to begin her education. Based upon our review of the record, we find that the trial court erred as a matter of law by failing to consider the relevant statutory factors in denying Mother's request for rehabilitative alimony and making its decision to award $25,000 as alimony in solido to "begin her education." Further, based upon our review of the record and the relevant statutory factors, we find that Mother's economic disadvantage as compared to Father is very significant, that she is disadvantaged in part due to sacrificing employment opportunities to be a homemaker raising the parties' children, that she has few separate assets, and that she will remain at a great economic disadvantage without some assistance to acquire additional education or training that will enable her to achieve a reasonable standard of living, albeit not the standard that existed during the marriage or the post-divorce standard of living available to Father. *See Gonsewski*, 350 S.W.3d at 109 (citing Tenn. Code Ann. § 36-5-121(d)(2)-(3); *Bratton*, 136 S.W.3d at 605; *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003)).

Based upon the legislative preference for rehabilitative alimony and the facts of this case, we find that the trial court erred in failing to award rehabilitative alimony, either in addition to or instead of $25,000 as alimony in solido.[7] We, therefore, remand this issue to the trial court for a determination of the appropriate sum and duration of rehabilitative alimony.

## IV. ATTORNEY'S FEES

Mother also requests her attorney's fees on appeal. An award of attorney's fees is considered appropriate when "the final decree of divorce does not provide the obligee spouse with a source of funds, such as from property division or alimony in solido, with which to pay his or her attorney." *Yount v. Yount,* 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002) (citing *Houghland v. Houghland,* 844 S.W.2d 619, 623 (Tenn. Ct. App.1992)). Moreover, when the dependent spouse has demonstrated that he or she is financially unable to procure counsel, and the other spouse has the ability to pay, the court may properly order the husband to pay the dependent spouse's attorney's fees. *Houghland,* 844 S.W.2d at 623.

Mother has prevailed on several of the issues on appeal and the record shows that she does not have the ability to pay all of her attorney's fees on appeal. Therefore, we have concluded that she is entitled to recover a portion of the fees she incurred on appeal and remand this issue to the trial court to determine the amount she is reasonably entitled to recover.

---

[7]To be clear, we do not find nor imply that Mother is entitled to $3,023.33 per month for six years; instead, the amount and duration of rehabilitative alimony is left to the discretion of the trial court.

**I**N **C**ONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded with costs of appeal assessed against both parties equally.

_____
FRANK G. CLEMENT, JR., JUDGE