Cora V. BUTLER, Plaintiff-Appellant,

v.

Fred H. BUTLER, Defendant-Appellee.

Court of Appeals of Tennessee,
Middle Section at Nashville.

July 13, 1984.

Permission to Appeal Denied by
Supreme Court Oct. 1, 1984.

Thomas Watson, Nashville, for plaintiff-appellant.

Fred H. Butler, pro se.

## OPINION

KOCH, Judge.

This is an action for divorce in which Cora V. Butler charged her husband, Fred H. Butler, with cruel and inhuman treatment and sought a decree of divorce. After hearing testimony from the plaintiff and the defendant, the trial court found that Mrs. Butler was entitled to a divorce on the grounds of cruel and inhuman treatment and thereupon granted her an absolute divorce. The trial court also awarded Mrs. Butler $500 in attorney's fees but refused to grant her request for alimony.

Mrs. Butler has perfected an appeal from the trial court's action and is contending that the trial court erred by not awarding her alimony.[1] She now requests this Court to grant her alimony *in solido* in the amount of $3,877.94, alimony *in futuro* in the amount of $750 per month and reasonable attorney's fees for the instant appeal. The parties will hereinafter be referred to by name or as they appear in the trial court.

For the reasons stated herein, we affirm the trial court's decision to grant Mrs. Butler an absolute divorce based upon cruel and inhuman treatment. However, we modify the trial court's decree with regard to alimony for Mrs. Butler to provide that Mr. Butler be required to pay Mrs. Butler alimony in the amount of $250 per month retroactive to July 19, 1983, the date of the entry of the original divorce decree.[2]

The plaintiff in this case is a 59 year old woman who in 1970 married a man seven years her junior. This was the second marriage for both parties. At the time of the marriage, both parties were apparently healthy and gainfully employed.

Shortly after the marriage, the plaintiff learned for the first time that her husband liked to gamble and that he had started to drink more heavily than he had prior to the marriage. To compound this problem, the plaintiff underwent the first of two back operations in 1971. Following the second operation in 1974, during which two discs were removed, Mrs. Butler was left partially paralyzed on her right side. She had not been employed in any way since March, 1979. The record contains uncontroverted proof that these two back operations, together with a gall bladder operation in 1981, have rendered her totally unable to work. Her doctor has advised her not to

---

1. We note at the outset that counsel for the plaintiff sought and obtained from this Court an extension of time within which to file the statement of the evidence in this cause. Despite this extension, the statement of the evidence was not filed with the trial court until the day after the deadline set by this Court. In light of the Tennessee Supreme Court's ruling in *Davis v. Sadler*, 612 S.W.2d 160 (Tenn.1981), we find that counsel has made a good faith effort to file the statement of the evidence in accordance with the requirements of Tenn.R.App.P. 24 and, in light of our decision herein, that the defendant has not been prejudiced by the plaintiff's filing of the statement of the evidence one day late. Therefore, in accordance with Tenn.R.App.P. 2, we have suspended the operation of Tenn.R.App.P. 24(c) and have treated the statement of the evidence as timely filed.

2. On April 17, 1984, the Court received a handwritten letter from the defendant, now representing himself, requesting that this appeal be continued because he had suffered a heart attack. The Court has considered this statement for the sole purpose of determining whether a continuance should be granted. The defendant has failed to substantiate this claim despite this Court's invitation to do so. Thus, on June 13, 1984, this Court, pursuant to Tenn.R.App.P. 29(c) ordered that this case be submitted for decision on the record and the appellant's brief.

lift weight over five pounds. She is now required to use a cane almost all the time and sometimes falls when she does not use her cane.

The plaintiff testified at trial, without contradiction, that because she is unable to work, her total monthly income is a $264.30 social security check and $75 worth of food stamps. She also testified that her social security payments would increase to $297 each month following the divorce. Mrs. Butler has few other personal possessions and is sufficiently destitute that the trial court, following a review of her financial statement, entered an order on February 8, 1984 finding her to be indigent and permitting her to proceed *in forma pauperis* on appeal.

Mrs. Butler apparently had a modest amount of personal assets prior to her marriage. However, these assets were dissipated during her marriage to the defendant. In addition to the money she gave the defendant for drinking and gambling on the occasions when he threatened to leave her if she did not give him money, Mrs. Butler used most of her personal assets to purchase a restaurant and bar when her husband decided to go into that business. In order to finance this ill-fated venture, Mrs. Butler surrendered five insurance policies, withdrew her personal savings and sold five acres of land belonging to her. The business ended up a failure because her husband refused to do any work and insisted on giving his friends free drinks.

The plaintiff is also the conservator of a son by her first marriage who has been a patient at a Veteran's Administration hospital for the past ten years. She receives a social security benefit check each month in the amount of $409 which is intended for his benefit. There is no proof in the record that Mrs. Butler has used any of these funds for her own personal benefit. On the contrary, it appears that the defendant tried on repeated occasions to borrow these funds for his own use.

The defendant proved to be less than an ideal husband. He does not dispute the plaintiff's testimony that he drank to excess and gambled away large sums of money. Likewise, he does not deny that he was in the company of other women during the marriage and that he would frequently stay out late at night without telling his wife where he was or what he was doing.

The proof heard by the trial court shows that Mr. Butler is in good health and that he has held various jobs during the marriage.[3] For most of this time, he was employed as an automobile salesman by various car dealerships in the Nashville area. He is paid on a commission basis. Since 1981, his income has averaged $20,000 each year. In some months, he has earned as much as $5,500. Most of these funds were spent on cars, clothes and gambling.

Despite his wife's back operation, he deserted her in 1976 and moved to California after borrowing $300 and taking all the funds left in the couple's savings account. The defendant remained in California for nine months. During this time, he had little contact with his wife and provided her with no support.

When he returned to Nashville, the defendant again found work as an automobile salesman. While his income was adequate to support his wife, the defendant spent most of his salary on himself. For a time, he gave the plaintiff some money for support, but eventually he would not give her enough money to support herself, and she was forced to borrow money from relatives. Mrs. Butler testified that between 1981 and 1983, she received a little over $1,000 from the defendant. She also testified without contradiction that his drinking and gambling became worse during this period of time until their separation.

We are mindful that the award of alimony and counsel fees in divorce cases is

---

**3.** While the defendant has submitted certain information relating to his health which was not considered by the trial court, this Court has not considered this information in deciding this appeal. Such information is beyond the scope of Tenn.R.App.P. 14. See *Duncan v. Duncan*, 672 S.W.2d 765 (Tenn.1984).

left largely to the discretion of the trial judge. Appellate courts should not interfere with the trial court's decision except when there is a clear showing that the trial court, in its discretion, reached the wrong conclusion with the result that a manifest injustice will be done if the trial court's decision is allowed to stand. *Crouch v. Crouch*, 53 Tenn.App. 594, 385 S.W.2d 288, 293–294 (1964) and *Raskind v. Raskind*, 45 Tenn.App. 583, 325 S.W.2d 617, 622–623 (1959). *See also* 24 Am.Jur.2d *Divorce and Separation* § 625 (1983). However, Rule 13(d) of the Tennessee Rules of Appellate Procedure vests in the appellate courts the authority and responsibility to consider divorce cases *de novo* on the record with an accompanying presumption of the correctness of the trial court's decision unless the evidence preponderates otherwise.[4]

■ The propriety of awarding alimony as well as the adequacy of the amount of an alimony award depends upon the unique facts of each case. *Williams v. Williams*, 146 Tenn. 38, 46, 236 S.W. 938, 940 (1922) and *Stone v. Stone*, 56 Tenn.App. 607, 409 S.W.2d 388, 392–393 (1966). In examining the facts in a divorce case, this Court, like the trial court, should weigh the evidence in light of the established standards relating to the entitlement to alimony. In 1981, the Tennessee Supreme Court enumerated certain factors to be used by courts when they are considering the propriety of an alimony reward. *Massey v. Massey*, 621 S.W.2d 728, 729–730 (Tenn.1981).[5]

■ When these standards are applied to the facts adduced at trial, we can reach no conclusion other than that the trial court erred by not awarding the plaintiff alimony and that an injustice will result if Mrs. Butler is not awarded alimony.

Mrs. Butler is an older woman with only an eleventh grade education. She is now incapacitated and unable to work. What little assets she had were dissipated by the defendant during their marriage. There is no reasonable prospect that she will be able to support herself. She has been found to be indigent by the trial court. Her income consists of social security payments that fall short of meeting her minimum needs.

On the other hand, the evidence before the trial court showed that the defendant was gainfully employed and for the past several years has had an average annual income in excess of $20,000. Most of the income he earned during the marriage was not used to support his wife. In fact, it seems uncontroverted that his funds were used to satisfy his desire to drink, gamble, drive luxury cars and wear fancy clothes. He also convinced his wife to use her own assets to purchase a business he wanted to run and then ruined the business by failing and refusing to attend to it properly.

Based upon this evidence, the plaintiff is entitled to alimony. It is not disputed that her monthly income is approximately $340 while her monthly expenses are approximately $580. In recognition of her past contributions to the marriage, her age, poor health, her inability to become gainfully employed and the conduct of the defendant during the marriage, the plaintiff should receive alimony in the amount of $250 per month so that she will be able to meet her basic monthly expenses. The plaintiff is entitled to this alimony from July 19, 1983, the date on which the trial court awarded her a divorce. The trial court's final decree herein is, therefore, modified to provide that the defendant should pay to the plaintiff in a lump sum the alimony due and owing from July 19,

---

4. Tenn.R.App.P. 13(d) replaces Tenn.Code Ann. § 27–3–103 which was repealed by Chapter 449, Section 1(10), Public Acts of 1981. The rule does not differ materially from the repealed statute.

5. These standards do not differ materially from those delineated by this Court in *Stone v. Stone, supra,* 409 S.W.2d at 392. They are also similar

to those contained in Tenn.Code Ann. § 36–5–101(d) which became effective on September 1, 1983. Because of this similarity, we need not decide whether the standards in Tenn.Code Ann. § 36–5–101(d) can be applied in cases wherein the cause of action accrued prior to September 1, 1983.

1983 and that he should pay alimony in the amount of $250 per month thereafter.

Upon remand, the trial court, in accordance with *Folk v. Folk*, 210 Tenn. 367, 357 S.W.2d 828 (1962), shall also determine the amount of attorney's fees to be awarded to the plaintiff for her counsel's services on appeal.

TODD, P.J. (M.S.), and LEWIS, J., concur.