# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### MAY 18, 2006 Session

## CHRISTY NEAL ELIZABETH BARRENTINE v. TIMOTHY TYRONE BARRENTINE

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-000072-02      Robert L. Childers, Judge**

---

**No. W2005-02082-COA-R3-CV - Filed September 13, 2006**

---

This appeal stems from a divorce. In this appeal, the husband asserts that the circuit court erred when it (1) awarded his wife transitional alimony in the amount of $4,000 per month for the first four years and $1,000 per month for the next five years, (2) assigned 100% of the parties' marital debts to him, and (3) allocated $650 for his wife's work related child care expenses when calculating the parties' child support obligations. Husband argues that the amount of transitional alimony was excessive as he did not have the ability to pay that amount and that the amount exceeded his wife's needs. He also argues that the circuit court should have equitably distributed the parties' marital debts and that the circuit court should not have allocated work related child care expenses in excess of his wife's monthly gross income. Additionally, the wife has requested that this Court award her attorney's fees on appeal. We affirm as modified the decisions of the circuit court. We decline to award the wife her attorney's fees on appeal.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Stuart B. Breakstone, Kathy Baker Tennison, Memphis, TN, for Appellant

Linda L. Holmes, Memphis, TN, for Appellee

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

On April 4, 1992, Christy Neal Barrentine ("Wife" or "Appellee") and Timothy Tyrone Barrentine ("Husband" or "Appellant") were married. On January 4, 2002, Wife filed for divorce. At the time Wife filed for divorce, the parties had been married for ten years and had three minor children born of the marriage. The facts established that Wife had a high school equivalency diploma, had completed a few semesters of college, was the primary caretaker for the parties' three minor children, worked very little, and had been infected by Husband with an incurable sexually transmitted disease. The facts also established Husband was a licensed pilot employed at Federal Express and made $160,997.40 in 2003. In her complaint, Wife alleged inappropriate marital conduct and irreconcilable differences as grounds for divorce. Subsequently, Husband filed his answer to Wife's complaint for divorce along with a counter-complaint for divorce alleging the same grounds for divorce that Wife alleged in her complaint. Wife then filed a motion to amend her complaint in order to allege various tort claims related to Husband's infection of Wife with an incurable sexually transmitted disease.

The circuit court entered a divorce decree on December 19, 2003 *nunc pro tunc* to November 21, 2003. Afterwards, the circuit court began its determination of the financial aspects of the case. Pursuant to rule 14(C) of the local rules of the Shelby County Circuit Court, both parties submitted an affidavit stating their income and expenses. In his affidavit, Husband stated that his monthly net income was $11,800 and that his monthly expenses totaled $8,539.52. In her affidavit, Wife stated that her total net monthly income from all sources was $4,300 and her monthly expenses totaled $7,128. Wife's total net monthly income included $2,400 in child support from Husband and $600 in gross income from her employment as a personal trainer. Wife's monthly expenses included $1,075 in child care expenses, $300 in attorney's fees, and $1,120 per month in tuition expense for the University of Memphis.[1]

Thereafter, because it found that Wife "need[ed] assistance to adjust to the economic consequences of this divorce," the circuit court awarded wife transitional alimony as follows: $4,000 per month for the first four years and $1,000 per month for the next five years. Payments would stop if Wife remarried or died. Additionally, the circuit court split the parties' personal property as follows: 50.5% to Wife and 49.5% to Husband. The circuit court also assigned 100% of the parties' marital debts to Husband and entered a permanent parenting plan naming Wife as the primary residential parent.

---

[1] In her affidavit, Wife reported that annual tuition for the University of Memphis was $4,480. Although Wife claimed in her affidavit that she would incur $1,075 in child care expenses, Wife testified that she would incur at most $980 in child care expenses and that, during the school year, her monthly child care expense would be $650. In addition, the circuit court ordered Husband to pay all of Wife's attorney's fees.

On July 27, 2005, a divorce referee conducted a hearing between the parties as to child support. On August 16, 2005, the divorce referee entered her order requiring Husband to pay $2,493 in child support. When the divorce referee calculated each parties' child support obligation, it allocated $650 to Wife for her work-related child care expenses. This amount was incorporated into the child support obligation. Thereafter, Husband appealed the divorce referee's decision to the circuit court. On November 14, 2005, the circuit court entered an order affirming the divorce referee's decision.

## II. ISSUES PRESENTED

Appellant has timely filed his notice of appeal[2] and presents the following issues for review:
1. Whether the circuit court erred when it assigned Appellant 100% of the parties' marital debts;
2. Whether the circuit court erred when it allowed Appellee to claim work-related child care expenses in an amount that exceeded her monthly income; and
3. Whether the circuit court erred when it awarded transitional alimony of $4,000 per month for the first four years and $1,000 per month for the following five years.

Additionally, Appellee presents the following issue for review:

4. Whether Appellee is entitled to her attorney's fees on appeal.

For the following reasons, we affirm as modified the decisions of the circuit court. Further, we decline to award Appellee her attorney's fees on appeal.

## III. DISCUSSION

### A. Allocation of Marital Debts

First, on appeal, Appellant asserts that the circuit court erred when it assigned him all of the parties' marital debt. "[M]arital debts are subject to equitable division in the same manner as marital property." *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003) (citing *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 243 (Tenn. Ct. App. 1995); *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn Ct. App. 1989)). Further, "[a] trial court is afforded wide discretion in dividing marital property, and its distribution will be given 'great weight' on appeal." *Raines v. Raines*, No. M2002-01952-COA-R3-CV, 2003 Tenn. App. LEXIS 784, at *7-8 (Tenn. Ct. App. Nov. 3, 2003) (citing *Ford v. Ford*, 952 S.W.2d 824, 825 (Tenn. Ct. App. 1997)). When allocating marital debt between divorcing spouses, a trial court must look to the following factors: "(1) the debt's purpose;

---

[2] This Court is mindful that there is no order in the record granting or denying Wife's motion to amend her complaint. As a result, Wife's additional tort claims were denied by implication. As such, we find that the divorce decree and subsequent orders of the circuit court disposing of Wife's original complaint and Husband's counter-complaint are final, appealable orders.

(2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt." *Alford*, 120 S.W.3d at 813 (citing *Mondelli*, 780 S.W.2d at 773).

On appeal, Appellant asserts that the circuit court should have equitably divided the marital debts between the parties rather than apportioning 100% of those debts to him. To support his contention, Appellant relies on this Court's recent decision in **Woods v. Woods**, No. M2002-01736-COA-R3-CV, 2005 Tenn. App. LEXIS 409 (Tenn. Ct. App. July 12, 2005). In *Woods*, this Court found that the trial court erred when it divided the marital estate giving 80% of the estate to the wife. *Id.* at *27. In that case, we found that both parties had worked outside of the home and pooled their resources to pay for marital expenses. *Id.* at *25. We also found that, while the husband earned a greater income than the wife at the time of the divorce, the wife had an "earning potential that far exceed[ed] her income at the time of the divorce." *Id.* at *25-26. This Court found other factors that supported granting the wife a larger share of the marital estate. *Id.* at *26. We then modified the trial court's award to provide for a more equitable division of the marital assets and debts. *Id.* at *27-28.

However, the facts in this case present a much different picture than in *Woods*. During the marriage, Appellee was the primary caregiver and did not maintain full-time employment. Appellant is a pilot for the Federal Express Corporation earning in excess of $160,000. The circuit court found that Appellant had "much greater vocational skills, employability, and earning capacity than [Appellee]" and that Appellant had "a much greater ability . . . for future acquisitions of capital assets and income." In this case, it is readily apparent that Appellant was best able to repay the debt based on the parties' relative economic positions and future earning potential. As such, we conclude that the circuit court did not abuse its discretion in awarding Appellant 100% of the parties' marital debt. Accordingly, we affirm the decision of the circuit court allocating 100% of the marital debts to Appellant.

## B.    Child Care Expenses

Next, on appeal, Appellant contends that the circuit court erred when it allocated Appellee $650 in work related child care expenses when determining child support as the amount allocated exceeded Appellee's monthly income.

Pursuant to the child support guidelines in effect at the time of the hearing to establish Appellant's child support obligations, a trial court could adjust an individual's child support obligation to accomodate for "childcare expenses necessary for the parent's employment, education, or vocational training that are determined by the tribunal to be appropriate, and that are appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and child were living together . . . ." Tenn. Comp. Admin. R. & Regs. 1240-2-4-.04(8)(c)(1) (2005). Additionally, "[t]he trial court is vested with wide discretion in awarding child support and this court will not interfere except upon a clear showing that the trial court erred in exercising its discretion." **Bond v. Bond**, 1985 Tenn. App. LEXIS 2896, at *6 (Tenn. Ct. App. May 24, 1985) (citing *Harwell v. Harwell*, 612

S.W.2d 182, 185 (Tenn. Ct. App. 1980)).  This Court "will set aside a discretionary decision only when the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence." ***White v. Vanderbilt Univ.***, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999) (citing *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).  Further, this Court "should permit a trial court's discretionary decision to stand if reasonable judicial minds can differ concerning its propriety."  ***Overstreet***, 4. S.W.3d at 709 (citations omitted).

At trial, Appellee testified that, while she made $600 gross income per month as a personal trainer, she was building "sweat equity" in her business in order to expand her business so that she could earn a greater income.  Thus, under the facts and circumstances of this case, reasonable judicial minds could differ as to whether the childcare expenses were appropriate.  As such, we find that the circuit court did not abuse its discretion when it allocated Appellee $650 in work related child care expenses when determining child support.  Accordingly, we affirm the circuit court as to this issue.

### C.    Alimony

Lastly, on appeal, Appellant contends that the circuit court erred when it required him to pay transitional alimony in excess of his ability to pay and in excess of Appellee's need.

Section 36-5-121 of the Tennessee Code provides certain factors for trial courts to consider when determining the amount of alimony a court should award a party:

> (i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
> (7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i)(1)-(12) (2005).[3]

"The two most important factors are the obligor's ability to pay and the obligee's need." ***Wiltse v. Wiltse***, No. W2002-03132-COA-R3-CV, 2004 Tenn. App. LEXIS 546, at *19 (Tenn. Ct. App. Aug. 24, 2004) (citing *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984)). "[T]he amount of alimony should be determined so 'that the party obtaining the divorce [is not] left in a worse financial situation than he or she had before the opposite party's misconduct brought about the divorce.'" ***Aaron v. Aaron***, 909 S.W.2d 408, 410-11 (Tenn. 1995) (quoting *Shackleford v. Shackleford*, 611 S.W.2d 598, 601 (Tenn. Ct. App. 1981) (citations omitted)). "The propriety of awarding alimony as well as the adequacy of the amount of an alimony award depends upon the unique facts of each case." ***Butler v. Butler***, 680 S.W.2d 467, 470 (Tenn. Ct. App. 1984). "The amount of alimony awarded is largely a matter left to the discretion of the trial court, and the appellate courts will not interfere except in the case of an abuse of discretion." ***Burlew v. Burlew***, 40 S.W.3d 465, 470 (Tenn. 2001) (citing *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)).

In this case, Appellant does not argue that Appellee was not entitled to alimony. Rather, Appellant asserts that his court ordered obligations constitute a burden that exceeds his ability to pay and that the award of alimony exceeds Appellee's need. We agree. Appellant has a net income of approximately $11,800 and expenses of approximately $8,539, which did not include any amount for his court ordered obligations. Appellant's court ordered obligations for alimony and child support constituted approximately 55% of his net income. Additionally, Appellant was required to pay 100% of the parties marital debt and to pay all of Appellee's attorney's fees. Further, Appellee stated that her monthly expenses totaled $7,128 and that her monthly income, including an estimated

---

[3] This Court is mindful that the provisions of section 36-5-121 of the Tennessee Code were previously codified in section 36-5-101 of the Tennessee Code, which became effective on September 1, 1983. Because of this, we need not decide whether section 36-5-121 can be applied retroactively to causes of action that accrued prior to July 1, 2005.

child support payment by Appellant of $2,400, was $4,300.[4]   As a result, the circuit court ordered Appellant to pay Appellee transitional alimony in the amount of $4,000 per month for four years followed by $1,000 for five years.

As Appellant correctly points out, the circuit court based its decision in part on an incorrect calculation of Appellee's needs.  When Appellee calculated her monthly expenses, she stated that she would need $1,120 per month for tuition expenses to attend the University of Memphis although she stated that her yearly tuition to the University of Memphis would be $4,480.  Likewise, when incorporating child care expenses into her monthly expenses, Appellee stated that she would need $1,075.  During the divorce referee's hearing to determine child support, Appellee testified that her monthly child care expenses would not exceed $215 per week, or roughly $980 per month.  Although Appellee has stated that her monthly child care expenses would not exceed $980 per month, when the divorce referee calculated Appellee's monthly child care expenses for child support, she determined that Appellee's monthly work related child care expenses would be $650.  Third, Appellee incorporated $300 per month when calculating her monthly expenses for payment of attorney's fees.  Pursuant to the circuit court's order, Appellant was liable for all of Appellee's attorney's fees at trial.  Finally, Appellee stated that she would incur $200 per month for payment of her moving expenses.  However, Appellant had previously paid her entire moving expenses.  Taking these calculation errors into consideration, we determine that Appellee's monthly expenses were $5,756.33 and that she would need $2717.33 to meet her monthly obligations.[5]

Looking at the unique facts of this case, we conclude that the circuit court erred by awarding the amount of alimony that it did as it was greater than Appellant's ability to pay and greater than Appellee's need.  "In the past, this court has reduced the amount of spousal support when, taking into consideration the paying spouse's other financial obligations, it has determined that the paying spouse would have insufficient income to support himself or herself."  *Woods v. Woods*, No. M2002-01736-COA-R3-CV, 2005 Tenn. App. LEXIS 409, at *34 (Tenn. Ct. App. July 12, 2005) (citing *Sullivan v. Sullivan*, 107 S.W.3d 507, 511 (Tenn. Ct. App. 2002); *Anderton v. Anderton*, 988 S.W.2d 675, 683 (Tenn. Ct. App. 1998)).  Thus, in the interest of judicial economy, taking into consideration the amount that Appellant has already paid at $4,000 per month, we modify the award of alimony set by the circuit court as follows: $4,000 per month to the date of filing of this opinion, $2,700 per month for the balance of the initial four-year period, and $1,000 per month for five years as ordered by the trial court.

---

[4] When calculating her monthly income, Appellant included $1,300 as garnishment rent support.  When adjusting Appellee's income to not include this income source, Appellee's monthly expenses exceeded her income from all sources by approximately $4,200.

[5] When we calculated Appellee's monthly expenses, we did not exclude her expense for attorney's fees.  Although the circuit court awarded Appellee her attorney's fees at trial, as we discuss *infra*, Appellee is responsible for her own attorney's fees on appeal.

-7-

### D.   *Attorney's Fees on Appeal*

Appellee has requested that this Court award her attorney's fees that she has incurred as a result of this appeal.  In this appeal, both parties have been successful.  "Where both parties are partially successful on appeal, it has been held that no counsel fees should be awarded in respect to the appeal."  ***Baggett v. Baggett***, 512 S.W.2d 292, 294 (Tenn. Ct. App. 1973) (citing 27B C.J.S. *Divorce* § 325(2)c).  As such, we decline to award Appellant her attorney's fees incurred on appeal.

### IV.   CONCLUSION

For the aforementioned reasons, we affirm as modified the decisions of the circuit court.  Further, we decline to award Appellee her attorney's fees on appeal.  Costs of this appeal are taxed one-half to Appellant, Timothy Tyrone Barrentine, and his surety, and one-half to Appellee, Christy Neal Elizabeth Barrentine, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE