IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 25, 2015 Session

## KYLE KERNAN v. BEVERLY J. KERNAN NABORS, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 79745          Bill Swann, Judge**

_____

### No. E2014-01679-COA-R3-CV-FILED-FEBRUARY 1, 2016

_____

Post-divorce, a guardian was appointed for two minor children while their mother received treatment for substance abuse.  The guardian, the half-brother of the minors, sought child support from both parents.  The guardian alleges, inter alia, the trial court abused its discretion by adjusting for tax deductions before calculating the mother's gross income for child support due and by allowing her credit for support in kind and purchases of necessities. We affirm the trial court's findings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

W. Andrew Fox, Knoxville, Tennessee, for the appellant, Kyle Wayne Kernan, Jr.

Judith A. DePrisco, Knoxville, Tennessee, for the appellee, Beverly J. Kernan Nabors.

## OPINION

## I.  BACKGROUND

Beverly Kernan Nabors ("Mother") and Jack Elliott Nabors ("Father") had one child born during the course of their marriage, Amber.[1] Mother and Father divorced in Knox County, Tennessee, on August 21, 1998, and custody of Amber was awarded to

---

[1] Amber, born March 24, 1995, is now twenty years old.

Mother. Father was ordered to pay child support. A second child, Jackie, was born after the divorce on December 17, 1999. After parentage was established, Father was ordered to pay support for the second daughter. In the years following the parents' divorce, it appears Father rarely met his support obligations.

Eventually, Mother's sister and brother-in-law, Greg Lyons, allowed Mother and her two daughters to stay in a residence they owned in California. Mother's adult son, Kyle Kernan ("Son"), eventually joined them. At some point, Mother became addicted to pain medication. The record contains evidence Mother also has problems with alcoholism. In October 2008, Mother was hospitalized for two weeks and later admitted to a rehabilitation clinic for a sober living environment. The daughters were left without a legal custodian.[2] It appears family members agreed to allow Son, Amber, and Jackie to remain in the condominium with Son as the supervising adult. Son applied for and was granted guardianship of his half-sisters by the State of California in December 2008. Members of Mother's family financially supported this arrangement with money from a family trust.

Over the next two and one half years, Mother resumed visitation with her daughters gradually. She regained full custody of her daughters on June 26, 2012. Son's guardianship was terminated on July 6, 2012.

Based on Mother's testimony, she initially was granted Sunday visitation with the children beginning January 2009. In June 2009, her visitation was extended to every other weekend. As of November 1, 2009, Mother had visitation with the children every weekend. Mother eventually located to San Ramon, California, the home of the children, on or about July 1, 2011, because the state court would not allow her to relocate the children to San Jose, California, where she lived for her job. By mid- 2011, Mother had the girls every Tuesday and Thursday, from the close of school until 9:00 p.m. On each Friday, immediately after school, Mother had visitation with the children until 9:00 p.m. on the following Sunday evening. During the weekends, Mother took the girls to extracurricular activities. Further, she provided meals for her daughters whenever they were with her, usually on Tuesday, Thursday, Friday, Saturday, and Sunday. Mother paid health insurance for her daughters at $325.74 per month and, with the exception of one disputed medical charge, she paid uncovered medical costs for the children. Additionally, Mother provided school supplies, clothing, fees for SAT and ACT tests, funds for extracurricular activities, and took the children to medical appointments. Upon moving to San Ramon in 2011, Mother noted she took the children to school every day, packed their lunches, and attended school events.

On April 3, 2012, Son, while still guardian, was allowed to intervene to seek child support from both natural parents in the state with original jurisdiction, Tennessee. An

---

[2] During this time, Father was incarcerated in Tennessee for manslaughter.

order entered April 5, 2012, established Father owed an arrearage to Mother in the amount of $29,747.78, which could be adjusted upon proof of additional payments, and required repayment in the amount of $40 per month.[3] Mother was ordered to pay to Son current support at the rate of $914 per month. The issue of arrearage was reserved. Father was ordered to pay support to Son in the amount of $498 per month. The findings and recommendations were confirmed on April 18, 2012.

On October 11, 2012, the trial court entered an order terminating Mother's current child support obligation to Son ($914) as of June 26, 2012, because Mother had resumed full time custody of her children. Hearings were held before the magistrate to establish the amount, if any, of arrearage owed by Mother to Son. With respect to her income for 2008 through 2012, Mother testified her income consisted of a base salary and sales commissions through June 2011, at which time she changed positions within her employer to relocate closer to her daughters. According to Mother, based on federal income tax returns and W-2 forms, her wages for the relevant years were: 2008 - $34,886; 2009 - $56,393; and 2010 - $83,692. Mother related her employer did not withhold federal income taxes, but did deduct California state income tax, FICA, and Medicare from her gross income. The employer did not reimburse her for various expenses incurred through her work, including fuel, mileage, and cell phone, although a monthly $300 vehicle allowance was included.

The magistrate observed, although many kinds of deductions are permitted by the IRS, not all of such deductions are appropriately considered for purposes of child support. Going year by year, beginning with 2008, the magistrate determined deductions not appropriate for child support adjustment included medical and dental expenses, income tax paid to the State of California, and unsupported business travel deductions. Accordingly, the magistrate increased the amount of adjusted gross income on Mother's tax return by adding back in state income tax, medical and dental costs, and one-half of the business travel expenses claimed by her on the 2008 federal income tax form, finally determining, for child support purposes, Mother had gross annual income in 2008 in the amount of $32,000. A child support worksheet was created, which contained no credit for visitation by either parent and resulted in Mother being responsible for child support in the amount of $719 per month, after being given credit for health insurance in the monthly amount of $325.74 for the months of October, November and December 2008. Father was responsible for $492 per month.

For 2009, the magistrate found Mother's total income was $61,193. Because Mother lacked supporting documentation for work expenses claimed in the 2009 1040 form, the magistrate permitted only one-half of the deductions claimed for business travel and disallowed deduction of other business expenses, which yielded an adjusted annual gross income of $47,498.50, or $3,958.21 per month. Due to a dispute as to the precise

---

[3] These arrearages are not part of this appeal.

number of overnight visits the children had with Mother in 2009, the magistrate "split the difference" between the numbers put forth by Son and Mother, giving Mother credit for 110 overnight visits and none for Father. After additional credit for the cost of health insurance for the children, Mother's child support obligation for 2009 was determined to be $792 per month and $405 per month for Father.

For 2010, the magistrate determined Mother's gross wages were $83,692. The magistrate permitted one-half of the claimed business travel deduction noted on Mother's federal tax return, or $11,453.50, producing an adjusted gross income for child support purposes of $72,238.50, or $6,019.88 per month. Mother was given credit for 110 overnight visits with the children and $340 per month for health insurance; Father was given credit for 14 overnight visits with the children. The resulting child support obligation for the parents was $1,006 for Mother and $309 for the Father.

Because Mother had not yet filed her 2011 tax return, no deductions were permitted to offset her child support obligation. Support was calculated based on her $105,330.78 gross income, with Mother being given credit for 110 overnight visits with the children and a monthly insurance cost of $343.92. Father's obligation to Son was calculated at minimum wage, 14 overnight visits with the children. Mother's support obligation for 2011 was determined to be $1302; Father's monthly obligation was $276.

Calculation of Mother's 2012 child support obligation was reserved, but Mother was required to pay Son $500 per month to begin reducing any past due child support, tentatively calculated at nearly $42,000. Father's arrearage was calculated to be $8,227. Shortly after the findings, Father died in a motorcycle accident.

After Mother appealed the rulings of the magistrate regarding the business deductions, she introduced evidence to the trial court corroborating the deductions claimed on her 2009 and 2010 federal tax returns. The trial court agreed with Mother "the tax filings are accepted facially . . . unless there is cross examination that establishes that the business expenses asserted are excessive and really are living expenses."

Before the trial court, Mother asserted her income for 2009, for child support purposes, should have been $29,004 versus the magistrate's finding of $47,498.50, and her 2010 income, rather than the $72,238.50 found by the magistrate, should have been $41,540. Mother also contended her 2011 income was $69,300, rather than the magistrate's finding of $105,330.78.

The trial court ruled the magistrate should accept one hundred percent of the deductions asserted by Mother, absent cross examination establishing such to be inappropriate. The case was remanded to the magistrate to determine child support where Mother's income for 2009 was $29,004 and $41,540 in 2010. No findings were made as

to Mother's child support obligation for 2011, and Mother was required to file her federal taxes for that year so support could be calculated.

On remand, the magistrate heard argument and received proof concerning credits against Mother's support obligation and Son's request for attorney fees in the amount of $22,265.50. Mother introduced into evidence various e-mail communications from Son, directing her to pay for various school activities and trips. Following attorney arguments regarding credit for Mother's voluntary payment of expenses for the children, the magistrate indicated she would be inclined to give Mother credit for expenses paid on behalf of the children at Son's request.

According to Mother's proof, in 2009, she spent a total of $387.89 on items for the children, which included clothing, shoes, and personal items; $8,541.46 in 2010; $7,680 in 2011; and similar expenses for 2012. The magistrate concluded Mother's support obligation for 2009 was $531 per month and $714 for 2010. Mother's 2011 income for child support purposes was found to be $69,300, or a monthly gross income of $5,775. She was credited with 110 overnight visits with the children. Father was credited with 14 overnight visits. Mother's monthly support obligation for 2011 was calculated to be $986; Father's obligation was $326.

At the final hearing before the magistrate, the magistrate found Mother had not requested and was not entitled to any credit against her support obligation for 2008. From January 2009 until the time Mother moved to San Ramon, Mother provided clothing and paid other expenses. Accordingly, the magistrate concluded Mother would be entitled to a one-third deduction for each month, beginning January 2009 through July 1, 2011. From July 2011 through June 26, 2012, when custody of the children returned to Mother, the magistrate found Mother was entitled to a fifty percent set off from her monthly support obligation. As of the time of the magistrate's report, Mother's arrearages were determined to be $31,435. The trial court confirmed the findings and recommendations on July 25, 2014.

Mother filed a motion under Rule 59 seeking to correct the findings and recommendations to include her child support obligation from January through June 2012. At that time, Mother argued her total support obligation for all relevant time periods was $19,603.44, and requested she be given credit for payments of $12,366. On August 26, 2014, the trial court determined Mother's arrearage as of July 23, 2014 was $7,237. Mother was ordered to continue paying the arrearage at $500 per month. The court held each party was responsible for bearing their own attorney fees. Son thereafter filed a timely notice of appeal.

## II. ISSUES

The issues raised on appeal are as follows:

A.      Did the trial court abuse its discretion or misapply the law when calculating gross income for child support purposes by adjusting Mother's income based on tax deductions, which had the effect of lowering Mother's income.

B.      Does the evidence preponderate against the finding Mother was entitled to adjustments in child support due to the time spent with the children while Son had physical custody.

C.      Did the trial court abuse its discretion in finding a deviation from the child support guidelines was warranted.

D.      Did the trial court abuse its discretion in finding a setoff against Mother's child support obligation under the necessaries doctrine was warranted in this case.

E.      Did the trial court commit error by considering all child support issues on July 23, 2014.

F.      Did the trial court abuse its discretion when it declined to award attorney fees to Son.

## III. STANDARD OF REVIEW

An appellate court's review of a trial court's findings of fact is de novo upon the record of the trial court, accompanied by a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *see Berryhill v. Rhodes*, 21 S.W. 3d 188, 190 (Tenn. 2000). We review a trial court's conclusions of law de novo, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

When it comes to setting child support, trial courts have discretion to determine the amount within the confines of the child support guidelines promulgated by the Tennessee Department of Human Services. *Hommerding v. Hommerding*, No. M2008-00672-COA-R3-CV, 2009 WL 1684681, at *3 (Tenn. Ct. App. June 15, 2009); *see* Tenn. Code Ann. § 36-5-101(e)(2) (courts shall apply child support guidelines as rebuttable presumption when setting child support). When an appellate court reviews the child support a trial court has set, we must consider "(1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the

appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

To the extent the trial court exercises its discretion to set child support, we review such decisions pursuant to the deferential "abuse of discretion" standard. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2006). "A trial court will be found to have 'abused its discretion' when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Id.*

## IV. DISCUSSION

### A., C. & D.

Son argues the trial court allowed Mother to receive a windfall while someone else paid the costs of her children's housing, food, and transportation. He contends the court also erred by providing categorical offsets against child support for purchases by Mother, rather than requiring evidence. According to Son, the court did not make the proper findings to justify a deviation from the support obligation. He claims the deductions lowered Mother's gross income in 2008 from $39,572 to $32,000 (-$7,572); in 2009 from $61,193 to $29,004 (-$32,189); in 2010 from $83,692 to $41,540 (-$42,152); and in 2011 from $105,330 to $69,300 (-$36,030).

As noted previously, the setting of child support is a discretionary matter. *See Kaatrude*, 21 S.W.3d at 248. That discretion is controlled by the child support guidelines. *See Smith v. Darmohray*, No. M2003-00236-COA-R3-JV, 2004 WL 904095, at * 4 (Tenn. Ct. App. Apr. 27, 2004) (citing *Butler v. Butler*, 680 S.W.2d 467 (Tenn. Ct. App. 1984)). The trial court is required to apply the child support guidelines as a rebuttable presumption. Tenn. Code Ann. §36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-02-04-.07(1)(a). However, the guidelines provide a court discretion to deviate in method or amount from the presumptive child support so long as the tribunal explains the basis for its deviation. Tenn. Comp. R. & Regs. 1240-02-04-.07(1)(b). Pursuant to the guidelines:

> When ordering a deviation from the presumptive amount of child support established by the Guidelines, the tribunal's order shall contain written findings of fact stating:
>
> 1. The reasons for the change or deviation from the presumptive amount of child support that would have been paid pursuant to the Guidelines; and

2. The amount of child support that would have been required under the Guidelines if the presumptive amount had not been rebutted; and

3. How, in its determination,

(i) Application of the Guidelines would be unjust or inappropriate in the particular case before the tribunal; and

(ii) The best interests of the child for whom support is being determined will be served by deviation from the presumptive guideline amount.

Tenn. Comp. R. & Regs. 1240-02-04-.07(1)(c). As noted in *State ex rel. Irwin v. Mabalot*, No. M2004-00614-COA-R3-CV, 2005 WL 3416293 (Tenn. Ct. App. Dec. 13, 2005), "[t]he trial court is authorized to deviate from the guidelines in individual cases where their application would be unjust or inappropriate 'in order to provide for the best interest of the child or children *or* the equity between the parties.'" *Id.* at *3 (citing Tenn. Code Ann. § 36-5-101(e)(1)(A)).

The applicable definition of gross income as provided in the child support guidelines is as follows:

Gross income of each parent shall be determined in the process of setting the presumptive child support order and shall include all income from any source (before deductions for taxes and other deductions such as credits for other qualified children) whether earned or unearned, and includes, but is not limited to, the following:

(i) Wages;

(ii) Salaries;

(iii) Commissions, fees, and tips;

(iv) Income from self-employment;

(v) Bonuses; . . . .

*See* Tenn. Comp. R. & Regs., ch. 1240-02-04-.04. Son contends the court exceeded its authority by deviating from the guidelines to allow deductions of business travel expenses from Mother's gross income ***before*** calculating the amount of child support to

award.  As we considered in *Jesse v. Jesse*, No. M2012-01246-COA-R3-CV, 2013 WL 5970486 (Tenn. Ct. App. Nov. 7, 2013), Son asserts "the guidelines do not explicitly identify work travel expenses as a reason to deviate downwards and . . . the court therefore exceeded its authority in deducting these expenses from the . . . gross income[ ]."  *Id.* at *4.  As we noted in *Jesse*, however, "the guidelines are meant to provide guidance to the courts, not set specific limitations:

> Deviation from the Guidelines may be appropriate for reasons in addition to those previously established in 1240-2-4-.01-.06 when the tribunal finds it is in the best interest of the child . . . .

*Jesse*, 2013 WL 5970486, at *4-5 (citing Tenn. Comp. R. & Regs. 1240-02-04-.07(2)).

Under the facts of this case, the trial court explained its reason for deviating from the presumptive guideline amount in a memorandum opinion incorporated by reference.  In that opinion, the court stated as follows:

> The Court cannot find that the intervenor himself has borne any child support expenses.  He need not show that under the law.  Nevertheless, that does bear in ***considerations of equity***, which the Court will address below.  The Court remands to the Referee (or as the case may be directs counsel to prepare an appropriate order) for a hearing in which mother's income for child support purposes for 2009 is found to be $2[9],004.00 and for 2010, $41,540.00.  The Court credits her testimony and the exhibits today.  The Court is unable to make findings of fact as to 2011.  Accordingly, the mother shall file her 2011 taxes; that and the previous findings are remanded to the Referee for findings and recommendations as to her income for child support purposes for 2011.  The Magistrate is directed to give full consideration to what this Judge has done touching upon 2009 and 2010, as she makes her finding of fact.  It would appear by way of dicta, and this may save the parties a great deal of expense and heartache, that the mother's income for child support purposes for 2011 will be very closely in the neighborhood of $69,300.00.  The Court will not make that as a finding of fact today.  The Court sincerely hopes there will not be further litigation as to 2011. The foregoing gives full credit to the filings of Beverly Nabors touching upon her 1040 Returns for the years 2009 and 2010.  I will indicate, by way of dicta, that this does not

appear to be an attorney fee case for either side. Each side shall bear their own attorney fees.

> ***Is this a case for deviation from the child support guidelines? The Court finds that it should. The mother has borne in kind expenses throughout, and as noted, Mr. Kernan cannot be found today to have borne personally the child support expenses. Accordingly, any award of child support flowing from the mother will be a windfall to Mr. Kernan, which does not sound favorably in equity. We would also note, in terms of equity, that this is a mother who has received through the decades virtually no support from the birth father, who is recently deceased. She is entitled to the compassion of the Court.***

(Emphasis added.). On remand, the magistrate used the income amounts provided by the trial court and found "[a]s of January 29, 2013, the principal amount of Mother's total arrearage before application of interest is $31,435. This is calculated by adding arrearage amounts from the Findings and Recommendations of the January 29, 2013 hearing for 2008 ($2,157) and 2012 ($5,484); plus the arrearage amounts recounted above for 2009 ($6,372), 2010 ($8,568), 2011 ($11,820); for a total of $34,401; and subtracting the payments made by mother as of January 29, 2013 ($2,966)." The magistrate thereafter found Mother was allowed a credit of one third of her monthly child support obligation beginning January 2009 through the end of June 2011 and a credit of one half of her monthly child support obligation beginning July 2011 through the end of June 2012.

Accordingly, the record before us reveals the trial court explained its reasons for deviating from the presumptive guideline amounts. The findings and recommendations of the magistrate provide us the amount of child support without the downward deviation. The court determined the deviation served the purposes of "equity between the parties." *See Mabalot*, 2005 WL 3416293, at *3. Therefore, the evidence before us does not preponderate against the trial court's findings. We conclude the court was authorized to apply a downward deviation to the presumptive child support guidelines based on the facts of the case and did not abuse its discretion in making deductions from Mother's gross income before calculating the proper amount of child support to award.

We further find the trial court did not abuse its discretion in crediting Mother against her child support obligation for having provided a significant amount of the basic expenses outlined under the guidelines, especially as she was directed to do so by Son. *See In re Jacob H.*, No. M2013-0127-COA-R3-JV, 2014 WL 5481112 (Tenn. Ct. App. Oct. 28, 2014) (holding the court allows credits under special circumstances where equitable considerations warrant such an allowance). In *In re Jacob H.*, this court observed

[t]here are . . . two recognized exceptions which permit crediting the obligor parent for non-conforming payments. One is the "necessaries rule," *see Oliver v. Oczkowicz*, No. 89-396-II, 1990 WL 64534, at \*2 (Tenn. Ct. App. May 18, 1990); the other is the "equitable considerations rule." *See Smith [v. Smith],* 255 S.W.3d [77] at 78 [(Tenn. Ct. App. 2007)], and *Simpson v. Simpson*, No. E2005-01725-COA-R3-CV, 2006 WL 1735134, at \*5 (Tenn. Ct. App. June 26, 2006). Under either exception, the court may credit the direct payments toward support arrearages as long as there is proper evidentiary support.

We first employed the "necessaries rule" for non-conforming payments in *Oliver v. Oczkowicz*, in which case the obligor father sought credit for a number of voluntary expenditures for the child, including private school tuition, medical bills, credit card charges, and a school uniform. *Oliver*, 1990 WL 64534, at \*2. In considering whether the father was entitled to a setoff against child support for these expenditures, we notably stated:

> [W]e think . . . a credit for voluntary payments made on behalf of the children [should be allowed] only where the payment is for the children's necessaries which are not being supplied by the custodial parent. This result is in line with what is apparently the majority view, which disallows credits for payments not made in accordance with the support order, and it recognizes that **equitable considerations may allow credits under certain circumstances.**

*Id.* (citations omitted).

Since *Oliver*, we have applied the "necessaries rule" under a variety of fact patterns for non-conforming payments including: (1) where the obligor, non-custodial parent seeks credit for voluntary expenditures on the child's behalf, *Moore v. Youngquist*, No. 01-A-01-9012-CH-00433, 1991 WL 57982, at \*2 (Tenn. Ct. App. Apr. 19, 1991); (2) where the obligor, non-custodial parent seeks credit for child support payments made to the child, *Brownyard v. Brownyard*, No. 02A01-9803-CH-00063, 1999 WL 418352, at \*15 (Tenn. Ct. App. June 22, 1999); (3) where the obligor, non-custodial

parent seeks credit for expenditures when the child shares a primary residence with or is cared for by that parent, *Peychek [v. Rutherford]*, [No. W2003-01805-COA-R3-JV,] 2004 WL 1269313, at *4-5 [(Tenn. Ct. App. June 8, 2004)]; and (4) where the obligor, non-custodial parent seeks credit for direct payments to the oblige, custodial parent, *Mock v. Decker*, No. W2004-02587-COA-R3-JV, 2005 WL 3447682, at *3-4 (Tenn. Ct. App. Dec. 15, 2005). Under these factual scenarios, we have consistently held that the non-custodial parent may be given credit where the payments are shown to be for "necessaries" that were not provided by the custodial parent. *See id.* The types of "necessaries" which are usually considered include: food, shelter, tuition, medical care, legal services, and funeral expenses.[4] *Peychek*, 2004 WL 1269313, at *4.

The foregoing notwithstanding, we find the facts of this case come under the equitable considerations exception, not the necessaries rule, as was our determination in *Simpson*, 2006 WL 1735134, at *5. Accordingly, we focus our analysis on the equitable considerations exception.

In *Simpson*, the child support order required the father to pay weekly child support directly to the court. *Id.* at *1. The mother filed a petition seeking a significant child support arrearage plus interest on the basis that the father had failed to pay support through the court clerk as required by the order. *Id.* The father testified that the mother and he communicated regularly and arranged "for the payment of support to be agreed upon from time to time." *Id.* at *5. The evidence also showed that the father made payments to third parties "***at the direction of [the mother]***" for the child's tuition, car payments/insurance, and other expenses. *Id.* Following trial, a judgment was entered against the father for an arrearage. *Id.* at *2. In calculating the arrearage, the trial court credited payments made by the father directly to the mother, but excluded payments the father had made to third parties for the

---

[4] "In order to maintain a successful claim for necessaries, [the claiming parent] 'must prove: (1) that the child needed the particular goods or services that were provided, (2) that [the non-claiming parent or guardian] had a legal obligation to provide the goods or services, (3) that [the non-claiming parent or guardian] failed to provide the goods or services, and (4) the actual cost of these goods or services.'" *Peychek*, 2004 WL 1269313, at *4 (quoting *Hooper v. Moser*, M2001-02702-COA-R3-CV, 2003 WL 22401283, at *3 (Tenn. Ct. App. Oct. 22, 2003)).

various expenses. *Id.* Father appealed claiming, in relevant part, that the payments for expenses should also have been credited to his support obligation as they were made pursuant to the mother's express directives. *Id.* We agreed with the father, finding he was entitled to credit on equitable grounds. *Id.* at \*5. As we explained:

> We see no practical distinction between Father sending child support payments directly to Mother, who in turn uses that money to pay the child's car payment and/or car insurance, and the situation here where Mother instead directs Father to make those payments for her, thereby eliminating the middle step. These payments clearly would be child support if Mother directed Father to pay the money directly into her checking account and he did so. We do not believe these same payments lose their character as child support simply because Mother, instead of directing the payments to go into her checking account, directed the payments to go to third parties in payment of expenses incurred by Mother for the child. ***The question is not whether Father should be given credit for these payments because they should be deemed for necessities under the law. Rather, the key factual point is that Mother specifically directed Father to make these payments for her. It would be inequitable for Mother to specifically direct Father to make these payments for her on the child's behalf, which Father did, and then for Mother to turn around and claim they were gifts.***

*Id.*

We concluded the preponderance of the evidence weighed against the trial court's finding that the payments to third parties were intended as gratuitous payments, not child support payments. *Id.* As noted in the quote above, we also reasoned that the issue was not limited by the "necessaries rule," rather, it was a question of equity where Mother was "directing Father where to send the child support payments." *Id.*

*In re Jacob H.*, 2014 WL 5481112, at \*4-6.

In the instant case, the undisputed evidence reveals Son told the children to get money from Mother for various expenses. Additionally, Son sent Mother e-mails directing her to pay for various school activities and trips. The magistrate and the trial judge determined an inequitable result would occur if Mother was not credited for the "in kind expenses" she paid, with the trial court specifically observing it "cannot find that [Son] himself has borne any child support expenses . . . [and] . . . that does bear in considerations of equity." We find no abuse of discretion.

**B.**

Son asserts the trial court over-calculated the amount of co-parenting days parents spent with the children. According to Son, Mother exercised zero visitation during the first 151 days of 2009. During the first five months of 2009, Mother only exercised Sunday afternoon visitations. There is no evidence Mother had any overnight visitations until June 2009, when she started overnight visitations every other weekend. Beginning in June 2009, Mother visited at the rate of two days every two weeks. During the remainder of 2009, Mother visited 30 days. Son states Mother received credit for 110 days of parenting time in 2009, when she should have received only 30.

Son notes there is no evidence Father exercised any custody as an actual caretaker during 2010. Father testified he served as caretaker in Tennessee for seven days in 2011. He exercised zero days in 2012.

According to Mother, the record supports the determination Son had ample opportunity to contest the number of overnight visitation credited to both parents when child support was calculated. He failed to do so. Mother asserts Son's counsel prepared the order using 110 days visitation by Mother as part of the calculation of child support.

In our view, Son had sufficient opportunity to appeal the magistrate's finding as to visitation to the trial court. The issue is raised for the first time here, and we find it is time barred. The trial court's decision regarding calculation of child support by using a specific number of days of visitation is affirmed.

**E & F.**

At an early stage, the trial court indicated this case did not appear to be one where attorney fees should flow from either side to the other. In an order filed August 26, 2014, the court held "[n]o attorney fee shall flow in either direction." The trial court, as a matter of equity, determined no attorney fees should be awarded. Given all the facts of this case, we find no abuse of discretion in the trial court's ruling. Accordingly, the denial of Son's request for attorney fees is affirmed. Further, the record does not support the finding any error was committed at the hearing on July 23, 2014.

# V. CONCLUSION

All findings and orders from the trial court are affirmed. Costs of this appeal are assessed to the appellant, Kyle Kernan. This matter is remanded to the trial court for such further proceedings as may be necessary.

_____

JOHN W. McCLARTY, JUDGE